## UNITED STATES v. YUCK KEE.

(District Court, D. Minnesota, Fourth Division. June 8, 1922.)

1. Searches and seizures �köm7—Requirements of Espionage Act were declaratory of common-law requirements.

The provisions of Espionage Act June 15, 1917, tit. 11, §§ 10, 12, 13 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼j, 10496¼l, 10496¼m), governing the issuance and service of search warrants and the seizure of property thereunder, were merely declaratory of the requirements of the common law, so that a search warrant issued and served without conforming to those requirements was illegal, whether those provisions have a general application or were limited to searches under that act.

2. Searches and seizures ⊃⊸7—Search under warrant in nighttime, without proper service or receipt for property, held invalid.

Where a search warrant, issued on affidavit which did not positively assert the property was in the premises to be searched, permitted search in the nighttime, and the search was actually made in the nighttime, and no copy of the warrant and no receipt were delivered to the person in charge of the property taken, the search was an illegal one, and the person indicted on the strength of evidence procured by such warrant is entitled to have the indictment quashed and the property returned to him.

Yuck Kee was indicted for an offense, and he moves to quash the indictment, and for an order directing the return to him of property alleged to have been unlawfully seized and taken from him. Motions granted.

The above-entitled cause came regularly on for hearing upon motion by the defendant to quash the indictment, upon the grounds, first, that evidence illegally secured was presented to the grand jury; second, that the illegally secured evidence thus presented to the grand jury was the sole evidence upon which the indictment was based. Motion was also made for an order directing the return to the defendant of the evidence alleged to have been unlawfully seized and taken from the defendant.

H. K. Chance, of Minneapolis, Minn., for the motion.

Alfred Jaques, U. S. Atty., of Duluth, Minn., and William Anderson, Asst. U. S. Atty., of St. Paul, Minn.

BOOTH, District Judge. The motion was made upon all the files of this court in the case of United States v. Yuck Kee, and also the files

of the United States commissioner, including a transcript of the evidence taken upon the hearing before him in the same case. After hearing the arguments of counsel, and duly considering the same, together with all the files above mentioned, it is hereby ordered that the motion to quash the indictment be and the same is hereby granted, and the motion to have returned to the defendant the evidence alleged to have been illegally seized and taken from him be and the same is hereby granted.

## Memorandum.

The specific matters complained of as rendering illegal the evidence seized and made use of before the grand jury are as follows: (1) That no sufficient affidavit was filed as a basis for the search warrant actually issued; (2) the search warrant was not read to the defendant at the time of the search and seizure; (3) no copy of the search warrant was served upon the defendant; (4) no receipt for the property taken was given to the defendant; (5) that no proper inventory under oath was made and returned to the United States commissioner; (6) no inventory of the property taken was given to the defendant.

From the files and records, including the transcript of the evidence taken before the commissioner, it appears that there was no affidavit before the commissioner stating positively that the property sought was in the place to be searched. It further appears that the warrant directed the search to be made either in the daytime or the nighttime, and that it was in fact made in the nighttime. It also appears that at the time of the search and seizure the search warrant was exhibited to the defendant, and he was told that the officer exhibiting the same was a federal officer, and had a search warrant to search the premises. It also appears from the evidence that the search warrant was not read to the defendant, and that no copy of the same was given him; that no receipt for the property seized and taken away was given the defendant, and that no inventory of the property taken was returned to the commissioner under oath, and no copy of the inventory given the defendant.

The defendant contends that this state of the record and of the evidence shows that the search warrant actually issued was not justified, and that what was actually done under the search warrant did not constitute a valid search and seizure. There are no specific directions in the United States Revised Statutes, so far as I have been advised or able to discover, relating to the service of search warrants in general, unless the provisions of title 11 of the Espionage Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v), are to be considered general in their application.

It is claimed by the defendant that section 722 of the Revised Statutes (Comp. St. § 1542) has an application to the present situation. I very much doubt the applicability of this section of the Revised Statutes; but, assuming that it has an application to a case like the one at bar, we are not materially aided, because there is no Minnesota statute providing specifically for the manner of serving search warrants in general.

[1] The federal Espionage Act of June 15, 1917 (title 11), relating to search warrants, contains provisions relating to the obtaining of search warrants, and also provisions as to the doing of certain acts in connection with the service and execution of the same. Sections 10, 12, and 13 of title 11 of the Espionage Act (sections 10496¼j, 10496¼l, 10496¼m) read as follows:

"Sec. 10. The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night."

"Sec. 12. When the officer takes property under the warrant, he must give a copy of the warrant together with a receipt for the property taken (specifying it in detail) to the person from whom it was taken by him, or in whose possession it was found; or, in the absence of any person, he must leave it in the place where he found the property.

"Sec. 13. The officer must forthwith return the warrant to the judge or commissioner and deliver to him a written inventory of the property taken, made publicly or in the presence of the person from whose possession it was taken, and of the applicant for the warrant, if they are present, verified by the affidavit of the officer at the foot of the inventory and taken before the judge or commissioner at the time, to the following effect: 'I, R. S., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant.'"

The question is raised whether the procedural provisions in title 11 of the Espionage Act are general in nature, applying to all search warrants, or were intended to be confined to proceedings under the Espionage Act, leaving other search warrants to be governed by the common law.

On the one hand, attention is called to the fact that when the National Prohibition Act (41 Stat. 305) was passed it was specially provided therein that issuance of search warrants thereunder should be governed by title 11 of the Espionage Act, and section 23 of title 11 (section 10496¼v) is also referred to as tending to show that the provisions of title 11 were not intended to have application to search warrants generally. On the other hand, it is pointed out, in the case of United States v. Maresca (D. C.) 266 Fed. 713, 725, that title 11 of the Espionage Act was taken almost bodily from the Code of Criminal Procedure of New York (sections 791–810), and this is quite apparent from a comparison of the two statutes. It is further pointed out, in the same case, that those sections of the New York Code of Criminal Procedure were simply declaratory of the historic common law, citing People ex rel. Robert Simpson Co. v. Kempner, 208 N. Y. 16, 101 N. E. 794, 46 L. R. A. (N. S.) 970, Ann. Cas. 1914D, 169.

Search warrants crept imperceptibly into the common law, according to Lord Camden, who pronounced the judgment in the case of Entick v. Carrington, 19 Howell's State Trials, 1029. See 2 Hale, P. C. 149; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. The earliest use of search warrants seems to have been in connection with stolen goods. Very early, however, they were authorized in connection with the collection of customs. Later they were extended to gambling outfits, counterfeit money tools, and, finally, intoxicating liquors. In the earliest search warrants of the common law it was re-

quired that the person having the goods should be arrested and brought with the goods before the magistrate. In the case of People v. Holcomb, 3 Park. Cr. (N. Y.) 656, the court said:

"At common law it was necessary that a search warrant should command that the goods found, together with the person in whose custody they should be taken, should be brought before the magistrate, to the end that upon examination of the facts, the goods and the prisoner might be disposed of according to law."

This requirement of bringing in the person existed in respect to search warrants relating to other things than stolen goods. See form of search warrant in case of Commonwealth v. Dana, 2 Metc. 329. Just when the change grew up which allowed the goods sought to be seized and brought before the magistrate, without also bringing in the person having possession thereof, I have not seen anywhere clearly stated; but, whenever it was, it seems reasonable to suppose that the requirements of leaving a copy of the search warrant and a receipt for the goods taken grew up along with the change noted, inasmuch as there would have been but little reason for such requirements when the goods and the person were both seized and taken together before the magistrate. The requirement that the magistrate should hand a copy of the inventory, if demanded, to the person in possession who was seized and brought would have been sufficient.

[2] In view of the foregoing, it would seem unnecessary to determine whether the issuance, service, and execution of the search warrant in the case at bar were governed by title 11 of the Espionage Act, or by the common law. The requirements of both are the same. Examining the facts in the case at bar in the light of these requirements, we find that there was no foundation laid for a search warrant allowing a search in the nighttime, yet the warrant so directed, and the search and seizure were in fact so made. We find, further, that no copy of the search warrant was left with the person in possession; that no receipt was given for the goods taken. We find, further, that no inventory under oath was returned to the United States commissioner. Under this state of facts I am forced to the conclusion that the search warrant in the form in which it was issued was unauthorized and that, even if it had been issued in proper form, yet it was not legally served and executed.