## GILES v. UNITED STATES.

(Circuit Court of Appeals, First Circuit.   October 28, 1922.)

### No. 1568.

**1. Criminal law ⚎698(1)—Objection by motion to quash indictment because founded on evidence obtained by unlawful search and seizure not waived by failure to object to the evidence when introduced.**

In prosecution for violation of the National Prohibition Act, the defendant, having seasonably moved to quash the indictment on the ground that it was founded solely on evidence obtained by unlawful search and seizure, and having duly excepted to overruling of motions, did not by failure to object to the admission of the evidence on such ground waive such objection.

**2. Intoxicating liquors ⚎248—Affidavit held insufficient for issuance of search warrant, in view of failure to state facts.**

Affidavit that drug store proprietor had illegal possession, and was engaged in the unlawful sale, of intoxicating liquor at his drug store, without stating facts from which it affirmatively appeared that the officer who made the affidavit had personal knowledge of facts competent for a jury to consider in a prosecution for possessing liquor in violation of the National Prohibition Act, and without stating the facts, and merely the conclusion, *held* insufficient for issuance of search warrant, under section 25, and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v). in view of section 5, requiring affidavits to state facts tending to establish the grounds of the application, or probable cause for believing that they exist, and National Prohibition Act, § 33, and Const. Amend. 4.

**3. Intoxicating liquors ⚎249—Search warrant held insufficient for failure to describe the property to be seized.**

Liquor search warrant, authorizing officer to "enter said premises in the day or night time, with the necessary and proper assistance, and there diligently to investigate and search into and concerning said violations, and to report and act concerning the same as required of you by law," *held* insufficient for failure to specifically describe the property to be seized, as required by Espionage Act, tit. 11, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼f).

**4. Intoxicating liquors ⚎249—Officer's return held defective.**

Return of officer to whom a liquor search warrant was issued *held* defective, for failure to show that a copy of the warrant, together with a receipt for the property taken, was given to the person from whom the property was taken, as required by Espionage Act, tit. 11, § 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼l).

**5. Intoxicating liquors ⚎255—Drug store proprietor held entitled to return of liquor seized under illegal search warrant.**

Drug store proprietor, from whom intoxicating liquor was taken under an illegal search warrant, was entitled to a return of the liquor so taken, on motion therefor, in prosecution for having unlawful possession of liquor for beverage purposes, in violation of the National Prohibition Act.

**6. Criminal law ⚎395—Liquor seized under illegal search warrant held not admissible in evidence.**

In prosecution of drug store proprietor for having unlawful possession of intoxicating liquor for beverage purposes, in violation of the National Prohibition Act, liquor seized after search of the store under illegal search warrant *held* not admissible.

In Error to the District Court of the United States for the District of New Hampshire; George F. Morris, Judge.

---

⚎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Daniel F. Giles was convicted of having alcohol in his possession for beverage purposes, in violation of the National Prohibition Act, and he brings error. Judgment reversed, verdict set aside, and case remanded.

Leo A. Rogers, of Boston, Mass. (Nathaniel E. Martin and J. Edward Flynn, both of Concord, N. H., and Gallagher, Rogers & Shea, of Boston, Mass., on the brief), for plaintiff in error.

Raymond U. Smith, U. S. Atty., of Concord, N. H.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. [1] In the New Hampshire district Giles was indicted for a violation of the National Prohibition Act, by unlawfully having in his possession at Concord, N. H., two quarts of alcohol fit for beverage purposes. Pursuing the procedure approved in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, he seasonably filed motions to quash the indictment, alleging that it was founded solely upon evidence obtained by unlawful search and seizure, and for a return of the property so seized. These motions were denied and exceptions duly saved. Just before the trial these motions were renewed, with like result. There is no merit in the government's contention that the defendant's failure again to object to the admission of the seized property as evidence against him amounted to a waiver of his rights. There was no occasion for the defendant's counsel, by repetition, to harass the court that had already ruled and saved the defendant's rights.

At the trial it was undisputed that the federal prohibition agent had seized in the defendant's drug store on August 8, 1921, a quantity of diluted alcohol, which the government contended fell within the definition of intoxicating liquor. Giles admitted that the liquor was there found, but contended that it was so medicated as to be unfit for beverage purposes, and that therefore his possession thereof after the expiration, on July 3, 1920, of the permit issued to him under section 6 of the National Prohibition Act (41 Stat. 305), did not violate the law. The issue of fact thus raised was determined by the jury against the defendant, and he was convicted.

It is plain enough from the entire record that the government's chief, probably sole, reliance for evidence against the defendant, both before the grand jury and before the petit jury, was the liquor seized, kept, and used as evidence, after the defendant's repeated motions for its return. Without this liquor thus seized there was, so far as appears, no case against the defendant.

The crucial questions now raised, therefore, grow out of the basis, contents and use of the search warrant. This is the first case involving the use of search warrants that has come up to this court since the passage of the National Prohibition Act, and, indeed, since the passage of the Espionage Act, in title 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v), of which are found

284 F.—14

detailed provisions as to search warrants. National prohibition has obviously greatly enlarged the field for the possible use of search warrants. There ought not to be in the different districts of the circuit the wide and conflicting differences in search warrant proceedings, now existing. The questions presented have therefore been carefully considered, in the light of many authorities, in addition to those cited by learned counsel. But these authorities are more interesting historically than important in the present case. The questions now before us are plainly covered by the federal statutes and by recent decisions of the Supreme Court.

Section 25 of the National Prohibition Act is as follows:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order. No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house. The term 'private dwelling' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house. The property seized on any such warrant shall not be taken from the officer seizing the same on any writ of replevin or other like process."

The main purpose of this section is to put intoxicating liquor, illegally possessed, and property designed for unlawful manufacture thereof, into the same category as gambling implements, counterfeit money, obscene literature, and other forms of outlawed articles. Search warrants are an appropriate and long-used means of governmental seizure for destruction of such outlawed articles.

Turning now to title 11 of the Espionage Act, 40 Stat. 228, we find detailed provisions as to the issuance and use of search warrants, modelled on the New York Criminal Code, § 791 et seq. The provisions most important and pertinent to the present case are as follows:

"Section 1. A search warrant authorized by this title may be issued by a judge of a United States District Court, or by a judge of a state or territorial court of record, or by a United States commissioner for the district wherein the property sought is located.

"Sec. 2. A search warrant may be issued under this title upon either of the following grounds:

"1. When the property was stolen or embezzled in violation of a law of the United States; in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was stolen or embezzled, or from any person in whose possession it may be.

"2. When the property was used as the means of committing a felony; in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or from any person in whose possession it may be.

"3. When the property, or any paper, is possessed, controlled, or used in violation of section 22 of this title; in which case it may be taken on the warrant from the person violating said section, or from any person in whose possession it may be, or from any house or other place in which it is concealed."

(Section 22, supra, deals with papers used in violation of international obligations and has no present application.)

"Sec. 3. A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched.

"Sec. 4. The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

"Sec. 5. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.

"Sec. 6. If the judge or commissioner is thereupon satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States, stating the particular grounds or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof, and commanding him forthwith to search the person or place named, for the property specified, and to bring it before the judge or commissioner.

"Sec. 7. A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

"Sec. 8. The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.

"Sec. 9. He may break open any outer or inner door or window of a house for the purpose of liberating a person who, having entered to aid him in the execution of the warrant, is detained therein, or when necessary for his own liberation.

"Sec. 10. The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night.

"Sec. 11. A search warrant must be executed and returned to the judge or commissioner who issued it within ten days after its date; after the expiration of this time the warrant, unless executed, is void.

"Sec. 12. When the officer takes property under the warrant, he must give a copy of the warrant together with a receipt for the property taken (specifying it in detail) to the person from whom it was taken by him, or in whose possession it was found; or, in the absence of any person, he must leave it in the place where he found the property.

"Sec. 13. The officer must forthwith return the warrant to the judge or commissioner and deliver to him a written inventory of the property taken, made publicly or in the presence of the person from whose possession it was taken, and of the applicant for the warrant, if they are present, verified by the affidavit of the officer at the foot of the inventory and taken before the judge or commissioner at the time, to the following effect: 'I, R. S., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant.' "

Sections 14, 15, 16, and 17 deal with matters subsequent to the return of the warrant, and sections 18 to 21 provide various penalties and remedies for misuse of the search warrant; they need not be quoted, al-

though they emphasize the care with which Congress guarded the use of this drastic process. Section 23 saves existing provisions of law regulating the issue of search warrants from repeal by implication and is of no present importance.

This careful codification of search warrant law leaves little or nothing for implication either as to the extent of the power or the method of its exercise. It authorizes search and seizure of stolen and embezzled property in conformity with a practice that probably goes back to Lord Coke's time. See Entick v. Carrington, 19 Howell's State Trials, 1030, at 1067. It also authorizes search for seizure of property "used as a means of committing a felony." This statute and section 25, supra, are silent as to any use of articles so seized as evidence of crime committed by persons from whom such articles are taken. Compare Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654. But section 33 of the National Prohibition Act does undertake to make rules of evidence in criminal proceedings.

The provisions 'in sections 3–6 are declaratory of the most carefully guarded previous judicial determinations of the meaning and scope of the Fourth Amendment to the Constitution of the United States, and of similar provisions in state Constitutions. It need hardly be pointed out that a process issuing to an administrative official, which will authorize him at any time of the day or night to enter the home or office of any person, breaking doors, windows and opening by force anything within the premises, for the purpose of taking possession of articles belonging either to the occupant or falling within the category of outlawed property, is a power capable of such oppressive and liberty destroying use that it should be strictly guarded and exercised.

In 1 Archbold's Criminal Practice and Pleading, p. 131, it is said:

"The proceedings upon search warrants should be strictly legal, for there is not a description of process known to the law, the execution of which is more distressing to the citizen. Perhaps there is none which excites such intense feeling in consequence of its humiliating and degrading effects."

See, also, the language of Lord Camden in Entick v. Carrington, 19 Howell's State Trials, 1030, 1066; Boyd v. United States, 116 U. S. 616, 622, 626, 6 Sup. Ct. 524, 29 L. Ed. 746, et seq.

We turn now to the search warrant proceedings in the case at bar. The indictment was found on September 21, 1921. Previous to the issuance of the search warrant the following affidavit was made:

### EXHIBIT A.

"United States of America, District of New Hampshire—ss.:

"Affidavit for Search Warrant.

"Be it remembered that on this day, before me, the undersigned, a United States commissioner for the district of New Hampshire, came D. T. Lordan, Prohibition Agent, who, being by me duly sworn, deposes and says that the laws of the United States, namely, the National Prohibition Act, is being violated by reason of the facts, to wit: By the illegal possession and unlawful sale of intoxicating liquor at the drug store of D. F. Giles, on North Main street, Concord, New Hampshire, and the Hotel Lenox, occupied by the said D. F.

Giles, on said North Main street, Concord, New Hampshire, and in a garage of the said D. F. Giles, situate in the rear of the drug store above mentioned, both being situate in the city of Concord and state of New Hampshire, and within the district above named.        Dennis T. Lordan (Affiant).

"Sworn to before me, and subscribed in my presence, this 5th day of August, A. D. 1921.        Burns P. Hodgman,
   "[Seal.]        United States Commissioner as Aforesaid.

"This cause coming on for hearing on the application for a search warrant supported by the affidavit above set forth, the undersigned commissioner thereupon being satisfied that there is probable cause to believe that the grounds set forth in said application and affidavit exist, and that the law is being violated as charged, does hereby so find.        Burns P. Hodgman.
"United States Commissioner as Aforesaid.

"United States of America, District of New Hampshire—ss.:

"Search Warrant.

"To D. T. Lordan, Internal Revenue Officer of the United States, for the District of New Hampshire, and to His Deputies, or Any of Them, and to Him as New Hampshire Federal Prohibition Agent:

"Whereas, complaint on oath, and in writing, supported by affidavit, has this day been made before me, Burns P. Hodgman, a United States commissioner for the said district, by D. T. Lordan, Prohibition Agent, alleging that the laws of the United States, namely, the National Prohibition Act, have been and are being violated by unlawfully possessing and selling intoxicating liquor at the drug store of D. F. Giles, on North Main street, Concord, New Hampshire, and the Hotel Lenox, occupied by the said D. F. Giles, on said North Main street, Concord, New Hampshire, and in a garage of the said D. F. Giles situate in the rear of the drug store above mentioned, and being situate in the city of Concord and state of New Hampshire and within the district above named.

"You are therefore hereby commanded, in the name of the President of the United States, to enter said premises in the day or night time, with the necessary and proper assistance, and there diligently to investigate and search into and concerning said violations, and to report and act concerning the same as required of you by law.

"Given under my hand and seal this fifth day of August, A. D. 1921.
"Burns P. Hodgman,
"[Seal]        United States Commissioner as Aforesaid.

"Return on Search Warrant.

"Returned this 8th day of August, A. D. 1921.

"Served by search as within directed, upon which search I found—
   "3 quarts and two gills full of alcohol;
   "1 small graduate, one glass (6 oz.);
   "1 porcelain pail;
   "1 gallon bottle;
   "2 one gallon cans;
   "About 4,000 labels and four quart bottles.

"I, Dennis T. Lordan, the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of the property taken by me on the warrant.        Dennis T. Lordan.

"Witness: G. H. Whitcher, Federal Prohibition Director.

"Sworn to and subscribed before me this 9th day of August, 1921.
"Burns P. Hodgman,
"United States Commissioner, District of N. H."

It is to be observed that this affidavit asserts baldly the illegal possession and unlawful sale of intoxicating liquor at three places, the defendant's drug store, the Hotel Lenox on the same street, also said to be occupied by Giles, but whether adjoining or not does not appear, and at the garage "situated in the rear of the drug store." This af-

fidavit is challenged as being insufficient in law. The learned District Court in his memorandum denying the motions to quash and for a return of the property, stated his view as follows:

"A commissioner, having presented to him affidavits or evidence of the violation of a criminal statute, accompanied by a request for a search warrant, in considering such evidence, acts in a judicial capacity, and should issue such warrant only upon competent evidence such as would be admissible upon the trial of a case before a jury. The finding of probable cause for the issuance of a search warrant is one exclusively for the court or commissioner having the matter in charge."

[2] This ruling seems to us plainly sound. But the difficulty we find is that the learned District Judge did not apply it in the case at bar. No lawyer would have suggested and no judge would have permitted, Lordan, testifying as a witness before a jury, to say that Giles was violating the National Prohibition Act by having illegal possession of intoxicating liquor at his drug store. He would have been required to state what he saw, or heard, or smelled, or tasted; that is, to give evidence on which the jury, under instructions of the court, could determine both as to the possession of liquor, as to whether it was intoxicating liquor, and as to whether possession of it was legal or illegal. The fact that Lordan's affidavit was not, in form, on information and belief, and that he bravely swore that Giles had illegal possession of intoxicating liquor, does not make his statement legal evidence of facts. It is not enough that the form of this affidavit leaves it possible that the affiant *might* have personal knowledge as to the possession of intoxicating liquor and as to facts tending to show that such possession was illegal. It should have affirmatively appeared that he had personal knowledge of facts competent for a jury to consider, and the facts, and not his conclusion from the facts, should have been before the commissioner. Such is the plain requirement of section 5, supra.

Lordan's affidavit was, in its avoidance of a statement of facts for the judicial consideration of the commissioner, exactly adapted to create such a situation as was shown at the trial to exist in the case at bar. In fact, as Lordan testified at the trial, he had not been in Giles' drug store for three or four months. He knew nothing about the possession, legal or illegal, by Giles of intoxicating liquor, except as he heard rumors, or as complaints were made to him by one or more unnamed persons. That in this case these rumors appeared to have had some foundation is, for present purposes, immaterial. Our law does not contemplate that homes and business premises shall be thus invaded, unless and until some person takes the responsibility of disclosing under oath to a judicial tribunal facts from which such tribunal—not the applicant or affiant—finds probable cause to believe articles particularly described, and properly seizable on search warrant, are in a place, also particularly described. In this case, as no facts whatever were put before the commissioner, he was ousted from his judicial function, and remitted to a performance purely perfunctory. The prohibition agent was applicant, affiant, in effect the judge of the existence of probable cause, and the officer serving the writ. This is a very dangerous amalgamation of powers.

The defendant also attacks the search warrant itself as being too general. It describes apparently three buildings—a drug store, a hotel, and a garage in the rear of the drug store. It is at least doubtful whether a description of three buildings—one of them a hotel—how large and to what extent occupied by guests or dwellers does not appear —does not bring the search warrant within the condemnation always visited in modern times on general search warrants. Compare State v. Duane, 100 Me. 447, 62 Atl. 80; 1 Bishop's Criminal Procedure, § 209.

[3, 4] Moreover, there is in this search warrant no mandate to seize any property, much less any specific description of the property to be seized. The direction is that the officer shall—

"enter said premises in the day or night time, with the necessary and proper assistance, and there diligently to investigate and search into and concerning said violations, and to report and act concerning the same as required of you by law."

This language, requiring the officer "to investigate and search into and concerning said violations," is very far from being a direction to go to a particularly described place and there to seize particularly described property and to bring the same before a magistrate. It is far more like a direction that might properly be given to a detective than like a mandate to an officer of the law to exercise one of the most drastic and offensive powers of government. There is no provision in the warrant requiring it to be executed and returned within 10 days. While it may be argued that the requirement that the officer "shall report and act concerning the same as required by law" is by implication a provision for a return, so as to relieve the warrant of one of the objections urged by Otis against the writs of assistance (see the Boyd Case, 115 U. S. 616, 622, 626, 6 Sup. Ct. 524, 29 L. Ed. 746), yet the great weight of authority is that the warrant should be specific and complete within itself. The officer serving it should not be left to ascertain and judge of the requirements of the law. Nor in the search warrant used in this case was there adequate compliance with the requirements of section 6, supra, requiring that the warrant itself should state "the particular ground or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof." Nor was there the positive proof required by section 10, supra, for a search warrant that may be served in the night. The return was also defective, inter alia, in that it does not show that "a copy of the warrant together with a receipt for the property taken (specifying it in detail)" was given to the person from whom the property was taken as required by section 12, supra.

While it cannot be said that no precedents whatever can be found for the issuance of search warrants as general and grounded on affidavits as inadequate as in this case, the overwhelming weight of authority is against such practice. In the Massachusetts district we find that the present practice of the commissioner at Boston requires one or more affidavits of persons having personal knowledge of facts competent to be adduced in evidence before a jury. The form in use in the Massachusetts district also requires a reasonably specific description

of the property to be seized, and the direction in the warrant is as follows:

"Now, therefore, you or either of you are hereby commanded in the name of the President of the United States, in the daytime only, to enter the said premises, and then and there to search diligently for said liquor or property and if the same or any part thereof shall be found on said premises, then you are hereby authorized and commanded to seize and secure the same and to make a return of your doings to the undersigned within ten days from the date thereof, and to do and report concerning the same as the law directs.

"You are likewise commanded in the event you seize or take said liquor or property under the warrant to give a copy of this warrant, together with a receipt for the liquor or property taken (specifying it in detail) to the person from whom it is taken by you, or in whose possession it is found, or in the absence of any person to leave a copy of this warrant with the receipt as aforesaid, in the place where said liquor or property is found."

The form used in New York is substantially the same.

[5, 6] The search warrant used in the case at bar was bad; the government's seizure was unauthorized; denial of the motion for its return was error. So, also, was the admission of the seized property as evidence against Giles. Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1015B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Woods v. United States (C. C. A.) 279 Fed. 706, 710; Honeycutt v. United States (C. C. A.) 277 Fed. 941; United States v. Bush (D. C.) 269 Fed. 455; Johnston v. United States, 87 Fed. 187, 30 C. C. A. 612; Ripper v. United States, 178 Fed. 24–26, 101 C. C. A. 152; United States v. Baumert (D. C.) 179 Fed. 735; United States v. Friedberg (D. C.) 233 Fed. 313; United States v. Rykowski (D. C.) 267 Fed. 866; United States v. Maresca (D. C.) 266 Fed. 713; Veeder v. United States, 252 Fed. 415, 164 C. C. A. 338; United States v. Yuck Kee (D. C.) 281 Fed. 228; Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568.

See also the collection of authorities cited by Mr. Fraenkel in his article "Concerning Searches and Seizures," 34 Harvard Law Review, 361.

A criticism of the prevailing doctrine by Professor John H. Wigmore is found in the American Bar Association Journal of August, 1922, reprinted in 7 Massachusetts Law Quarterly, 33.

As what we have said is enough to dispose of the case, we need not discuss various minor alleged errors, of no general importance.

The judgment of the District Court is reversed, the verdict set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.