# RAY DENTON v. STATE.

No. A-9169.   June 18, 1937.
(70 Pac. [2d] 135.)

Wilson & Porter, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and A. Clark, Co. Atty., for the State.

BAREFOOT, J. (after stating the facts as above). In this case a motion was made by defendant, before the trial, to suppress the evidence obtained by reason of the search warrant. This motion was presented and evidence offered thereon prior to the trial. The same was over-ruled and defendant excepted to the ruling of the court. It is contended by defendant: (1) That the affidavit was insufficient upon which to base the issuance of the search warrant, and the defendant having not waived his right to search his premises without a search warrant, the search was illegal and void; (2) that the search warrant was not served on the defendant as required by the statute; (3) that the search warrant was not addressed to an officer of Ottawa county as required by law; (4) that the search warrant was attempted to be executed in the nighttime and that the search warrant did not direct that it be so executed.

An examination of the opinions from this court, the federal courts, and the Supreme Courts of many states, reveals many seemingly conflicting opinions upon the issu-ance, service, and return of search warrants. Many of them are conflicting upon the very questions involved in this case.

It is our desire, in this opinion, to discuss the issuance and execution of search warrants so that hereafter it may be possible for the officers in this state to know just what is necessary in the securing and execution of a search warrant. The cases from this and other states have many times called attention to the fact that the issuance and execution of a search warrant is far more sacred to the citizens of this state than the arrest and conviction of some one individual. This is especially true where the warrant is executed for the search of the home of the citizens of this state.

With the enactment of the prohibition laws the state and federal governments have gone a long way by special statutory enactment in giving to officers the right of search and seizure, and have extended the same so that the home of the individual may be entered and searched. There were many years after the enactment of the federal Constitution that no such legislation could have passed the federal Congress, nor could it have been enacted by the Legislatures of the several states. The people knew of the uncalled for searches and seizures of the British government against the citizens of this country, hence the enactment of the Fourth Amendment to the Constitution of the United States. But with the passing of time a few of our citizens seem to forget the sacredness of their home and fireside, and, in their eagerness to make money and in an effort to defeat the law, they have degraded their homes by bringing liquor and other instruments of crime therein for the purpose of using them in violation of the laws of this country, thereby hoping to receive protection through the sacred right of forbidding their homes to be searched, under the terms of the Constitution. Recognizing this evil on the part of the few, our governments, both state and federal, have, as we stated before,

gone a long way in permitting even the home to be searched, and especially where it is being used as a place of public resort, and for the storing of intoxicating liquor to be used for unlawful purposes. The rights of the many have been made to suffer for the sins of the few. The courts of our country, although they have ever been the guardian of the personal rights of the individual, have upheld these laws. They have also gone a long ways in holding constitutional these laws to the end that the criminal minded of this country might not go unpunished. But these same courts, not only in this state, but in the nation, have uniformly held that the law which took away these sacred rights should be strictly construed, and that the officer who was given the power to issue the search warrant and to him who executed it should do so only in the manner and form as provided by the statute. We think this is entirely proper, yet enthusiasts often criticize the court for doing the very thing that protects them in the most sacred principle vouched for in the federal and state Constitutions.

The law should not be so interpreted that an individual might be punished, yet by the same principle many innocent and law-abiding citizens suffer the humiliation and inconvenience of illegal search and seizure. The laws of this state and the decisions of the courts have afforded ample opportunity for the detection and punishment of those who violate the prohibition liquor laws. But at the same time these courts have ever kept in mind that certain inalienable rights of the individual citizen are to be regarded as the very essence of constitutional liberty and these fundamental rights are as imperative in this country as are the right to trial by jury, the writ of habeas corpus, and due process of law. Especially are these rights due the citizens of this state in the protection of their

homes and automobiles. There will be times when certain of our citizens will violate the law through this protection, and some may go unpunished, but it is better this than that a principle be established where many of our citizens may suffer the humiliation and hardship of having their home and automobile illegally searched by an overzealous officer. We do not mean to criticize the zealous officer in the enforcement of this law. He is to be commended. He will follow the law. He will see that his search warrant is properly secured and properly executed, and there will be no desire on his part to turn this warrant, which is his protection, into an instrument to destroy the liberty of the law-abiding citizen which is guaranteed him by the state and federal Constitutions.

The officers of this state ought to be the first to uphold the courts in the enforcement of these fundamental rights. The procuring of a search warrant is an easy matter. It ought not to be secured in a haphazard way and served in a reckless disregard of the rights of the individual citizen. No more power or force should be used than is necessary to properly execute the warrant. Yet, if there is resistance, the officer should use such force as is necessary to carry out his mandate, and in doing this he is fully protected by his warrant if it is properly issued. It is, therefore, to his protection that the warrant be in proper form.

The county attorneys of this state, and no doubt many of them have already done so, should bring before them the sheriff and his deputies and also other peace officers of their county and explain to them in detail the necessity of a search warrant, the proper manner for the issuance, and the manner in which it should be executed and returned. The terms of the statute should be followed. This practice would cause many cases to be affirmed instead

of reversed and would save their counties additional costs and would at the same time protect the officer and the individual citizen in their respective rights.

The first question for consideration under the first assignment of error is: Was the affidavit sufficient to sustain the court in issuing the search warrant? It will be noted that the affidavit in this case is positive in its terms "that said building is a place of public resort, and said residence is used as a place for storing intoxicating liquors." This court has heretofore held in several cases that, where the affidavit is positive in its terms, this is sufficient to give the court jurisdiction and that the defendant will not be permitted on a motion to suppress the evidence to go behind the positive statement contained in the affidavit and prove that the person making the affidavit had no personal knowledge of the facts alleged therein, but was acting on information and belief. Phillips v. State, 34 Okla. Cr. 52, 244 Pac. 451; Ray v. State, 43 Okla. Cr. 1, 276 Pac. 785; Drummonds v. State, 45 Okla. Cr. 278, 283 Pac. 263; Bowen v. Commonwealth, 199 Ky. 400, 251 S. W. 625; Alvey v. Commonwealth, 199 Ky. 655, 251 S. W. 856; State v. English, 71 Mont. 343, 229 Pac. 727; People v. Haas, 79 Mich. 449, 44 N. W. 928; Potter v. Barry, Circuit Judge, 156 Mich. 183, 120 N. W. 586.

We are therefore of the opinion that the affidavit was sufficient for the officer to issue the search warrant for the reason that the statements made therein were positive. But in this connection and for future guidance we will say we think it is very much better practice to state in the affidavit the very facts upon which the information is based so the officer may have this information before the warrant is issued. The statute (Okla. St. 1931, § 3226 [22 Okla. St. Ann. § 1226]) gives the form of the search warrant which should be followed. See, also, Cornelius

on Searches and Seizures, pp. 302, 303, and 307, where forms of both the affidavit and search warrant were approved from different states. It will be noted that in all of these forms the statement of facts is included in the affidavit to secure a search warrant. We also call attention to the case of McHenry v. State, 61 Okla. Cr. 450, 69 Pac. (2d) 90, in which there is set out an affidavit to procure a search warrant. It will be noted in this case the particular facts are set forth in the affidavit which justified the issuance of the warrant. In the instant case the officer, when testifying at the trial, testified to certain facts within his own personal knowledge which would have justified the issuance of the warrant. These facts should have been stated by him in the affidavit. Sec. 3224, Okla. Stats. 1931 (22 Okla. St. Ann. § 1224); Duncan v. State, 11 Okla. Cr. 217, 144 Pac. 629; Gore v. State, 24 Okla. Cr. 394, 218 Pac. 545; May Vice v. State, 36 Okla. Cr. 18, 251 Pac. 509; Whitehead v. State, 28 Okla. Cr. 193, 230 Pac. 291.

The next question presented under the first assignment of error is: Did the defendant, when informed by the officers that they had a search warrant for the purpose of searching his premises, and his home, by making the statement, "That is fine and dandy, come right ahead," waive his constitutional right and thereby permit the officers to search without a warrant? This question has been before this court many times, and, while there may seem to be some conflict in the decisions, we have examined all of the cases, and it is our conclusion that the statement expressed in the case of Smith v. State, 34 Okla. Cr. 434, 246 Pac. 1109, 1111, best states the law as it should be when the court says:

"There is much conflict of authority as to what constitutes a waiver of defendant's constitutional rights in

search and seizure cases. We think the rule supported by reason and the weight of authority requires the state, where objection is properly made, to show that defendant waived his constitutional rights by freely and voluntarily consenting to the search. The right of the citizen to occupy and enjoy his home, however mean or humble, free from arbitrary invasion and search, has for centuries been protected by every court in the English speaking world, from Magna Charta down to the present, and is embodied in every bill of rights defining the limits of governmental power in our own republic.

"The mere fact that a man is an officer whether of high or low degree, gives him no more right than is possessed by the ordinary private citizen to enter and search the private premises of another for evidence of crime without a legal warrant procured for that purpose."

In the above case the defendant, on being told by the officer he had a search warrant, replied: "Go ahead and search; there is no whisky here." The court held that this did not constitute a waiver on her part of the right to have a search warrant issued before her premises were searched.

In the case of Herron v. State, 39 Okla. Cr. 346, 265 Pac. 147, 148, the officer said, "I have a search warrant," and the defendant replied: "You don't need it for me," held not a waiver.

In the case of Thomas v. State, 40 Okla. Cr. 98, 267 Pac. 278, the defendant, upon being informed by the officers that they had a search warrant, replied: "All right, go ahead and search." It was held that this was not a waiver of his constitutional rights and was not to be construed as an invitation to search his premises, but rather as a statement of the defendant that he did not intend to resist search under the search warrant.

See, also, Shockley v. State, 35 Okla. Cr. 437, 251 Pac. 514, where defendant said: " 'It was all right to go ahead,' and we did." Wilkerson v. State, 37 Okla. Cr. 43, 256 Pac. 63; Wilson v. State, 38 Okla. Cr. 409, 262 Pac. 501.

Not only has this court held that such expressions as those made by the defendant in this case do not constitute a waiver, but federal courts have announced the same construction upon almost the identical language. In the case of United States v. Rembert (D. C.) 284 F. 996, 998, Judge Hutcheson, who is now on the Fourth Circuit Court of Appeals, said:

"The principle invoked by the defendant is so fundamental, and the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures is so clearly guaranteed by the Contitution (amendment 4) that it would seem that the limits of the rights of an officer in the enforcement of law, and of a citizen in the enjoyment of his liberties, ought to be as well understood and as well observed as copybook maxims, for there can be no liberty except where there is a just and proper law enforcement, and there can be no proper law enforcement where liberty is unlawfully infringed.

"The fact, which is all too evident, on the one hand, that overzealous officers are not nice to find these limits and live within them, and, on the other hand, that the peaceable and law-abiding citizen is loath to enter upon a dispute with officers of the law when his guaranteed rights are infringed, makes it not only permissible, but desirable, that the court now briefly state the legal principles which control the matter of arrest and searches in such clear and definite form as that no federal officer can hereafter claim the excuse of ignorance when he violates a fundamental law, in order to secure evidence of the violation of some other law, and that well-disposed and law-abiding citizens may be advised of their obligations in the premises."

In Salata v. U. S., 286 F. 125, 127, the Circuit Court of Appeals of the Sixth Circuit used the following language:

"The further claim of the United States, that the plaintiff waived any constitutional right he might have had, and gave to these officers full permission to search his premises, regardless of the validity of the search warrant, is not sustained by the evidence. The witness, Beilstein, testified that, when he handed this search warrant to Salata and told him it was a search warrant to search his premises, Salata said: " 'Go ahead; you have full liberty to go all through the place.' I do not say that he used the word 'liberty,' but he did say, 'Go ahead.' "

"Upon the presentation of what appeared to be a valid search warrant Salata had no choice other than to permit the officers to make the search that the warrant purported to authorize. At that time and under those circumstances neither the words 'Go ahead,' nor 'Go ahead; you have full liberty to go all through the place,' can be construed as an invitation on the part of Salata to search his premises without a search warrant, but rather that it was not his intention or purpose to offer any resistance to the officers in the performance of their duty under what he believed, and had a right to believe, was a valid search warrant issued by competent authority on a proper showing of probable cause." Amos v. U. S., 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; United States v. Kelih (D. C.) 272 F. 484; Dukes v. U. S. (C. C. A.) 275 F. 142.

Other courts have passed upon this question in a similar manner. Meno v. State, 197 Ind. 16, 148 N. E. 420; State v. Lock, 302 Mo. 400, 259 S. W. 116; Morton v. State, 136 Miss. 284, 101 So. 379; Smith v. State, 133 Miss. 730, 98 So. 344; People v. Reid, 315 Ill. 597, 146 N. E. 504; State v. Luna (Mo. App.) 266 S. W. 755.

We are therefore of the opinion that defendant did not waive his constitutional right to have his premises

searched without a valid search warrant when he said, "That is fine and dandy, go right ahead," but rather that this statement on his part had the meaning that he did not intend to resist the officer in the execution of the warrant under his official duty. Not having waived his right to have his premises searched without a valid search warrant brings us to the next question raised by the defendant in this case: Was the search warrant properly served? The evidence of the officer who secured and served the warrant was as follows: Percy Boyd, a witness for the state, testified:

"Q. Mr. Boyd, when you procured these search warrants for this Spanish Village, what did you do? A. Put them in my pocket. Q. What did you do then? A. I served them that night. Q. How did you serve them? A. I went down there and told Ray I had a search warrant and he said: 'That is just fine and dandy, come right ahead.' Q. You didn't serve him with one? A. He didn't want me to. Q. You didn't give him one? A. I had it in my hand. Q. Did you put a copy of the search warrant around there any place? A. I had it in my hand. Q. Did you read it to him? A. Would have to catch him first. Q. You did catch him in the cafe? A. Yes, sir. Q. But you are positive you did not deliver to him personally a copy of this warrant, or anyone else? A. No, I never delivered it to him. I could have. Q. You didn't read this search warrant to him? A. He didn't want it read. Q. Then you started to read it to him? A. He said 'That is fine and dandy.' Q. You just told him you had a search warrant? A. Yes, sir. Q. Did you show him it was a search warrant? A. He knew it was. Q. Did you show him it was? A. I could have. Q. Did you let him read it? A. I could have. Q. He just knew what you told him? A. That was plenty for him."

It will thus be seen that there was no attempt on the part of the officer to deliver a copy of the warrant to the defendant. He, no doubt, was relying on the statement of

the defendant to "go ahead" and the fact that they were officers, to search the premises of the defendant. The statute of this state, section 2635, Okla. Stats. 1931 (37 Okla. St. Ann. § 84), provides:

"A copy of said warrant shall be served upon the person or persons found in possession of any such liquor, furniture or fixtures so seized, and if no person be found in the possession thereof, a copy of said warrant shall be posted on the door of the building or room wherein the same are found."

It will be noted from the above testimony that no effort was made by the officer to comply with this section of the statute. The purpose of the statute is that the defendant may have a copy of the warrant so he may examine the same and know that it has been issued by one who has authority and that it is in proper form as shown by the authorities heretofore cited. The defendant is entitled to this right and is entitled to have the law complied with by the officer making the search.

Some cases have held that a statement such as made by the defendant in this case is a waiver of the right to have a copy of the search warrant delivered to him, but we believe that the best reasoning and a great majority of the cases hold that when the statute provides that a copy shall be delivered to the defendant, that it means what it says, and that the officers should deliver to the defendant a copy of the warrant when the search is made. If there be a conflict in the testimony as to whether a copy was delivered, this should be decided by the trial court on motion for new trial, and his decision in passing upon the question of fact would be final.

In 56 Corpus Juris, p. 1242, it is said:

"Statutory provision for delivery of copy of warrant and receipt for property after seizure of property under

the warrant to the person, from whom the property was taken or in whose possession it was found, has been construed both as a directory requirement, and as a mandatory requirement."

The cases cited under this heading are all federal cases and have to do with the construction of the National Prohibition Act (27 U. S. C. A.). In the Search Warrant Act it is provided:

"Sec. 12. When the officer takes property under the warrant, he must give a copy of the warrant together with a receipt for the property taken (specifying it in detail) to the person from whom it was taken by him, or in whose possession it was found; or, in the absence of any person, he must leave it in the place where he found the property.

"Sec. 13. The officer must forthwith return the warrant to the judge or commissioner and deliver to him a written inventory of the property taken, made publicly or in the presence of the person from whose possession it was taken, and of the applicant for the warrant, if they are present, verified by the affidavit of the officer at the foot of the inventory and taken before the judge or commissioner at the time, to the following effect: 'I, R. S., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant.' " 18 U. S. C. A. §§ 622, 623.

It will be noted that the provisions of our statute and that of the federal statute are somewhat similar, but the Oklahoma statute says:

"A copy of said warrant shall be served upon the person or persons found in possession of any such liquors," etc.; while the federal statute provides: "When the officer takes property under the warrant, he must give a copy of the warrant together with a receipt of the property taken * * * by him."

The Oklahoma statute uses the word "serve"; the federal statute "give." If there is to be any distinction, we would certainly say that the word "serve" would be stronger than the word "give." The federal cases are in conflict in construing the statute.

The case of Giacolone v. United States (C.C.A.) 13 F. (2d) 108, 109, says:

"If the search warrant was valid and the original entry lawful, we cannot agree with the contention that the search was rendered unlawful by the mere failure of the officers to leave a copy of the warrant and a receipt for the property taken, or by the destruction of a large portion of the property found on the premises. United States v. Clark (D. C.) 298 F. 533 [535]; United States v. Old Dominion Warehouse (C.C.A.) 10 F. (2d) 736."

This case cites the case of United States v. Clark (D. C.) 298 F. 533, which supports the position taken in the Giacolone Case, but deals mostly with the return of the officer and the giving of the receipt. The case of United States v. Old Dominion Warehouse (C.C.A.) 10 F. (2d) 736, cited does not discuss the matter of the service of the search warrant. In the case of Gandreau v. United States (C.C.A.) 300 F. 21, the officer testified that he gave a copy of the warrant to the defendant at the time of the search. The government was permitted to amend the return of the officer at the time of the hearing showing this fact. We think this might be done under our statute upon a proper showing. In the case of United States v. Gaitan (D. C.) 4 F. 2d 848, from the Southern District of California, the court says that he sees no error by failure to deliver a copy of the warrant after a valid entry into the premises and search of the same. In the case of United States v. Kaplan (D. C.) 286 F. 963, there is a full and complete discussion of the different provi-

sions of the federal act, and while the court says that he does not think that a failure to comply with sections 12 and 13 would invalidate the warrant, that these acts are merely ministerial and only the officer would be liable in damages for a failure to comply with them. The argument in this case was that every section of the statute should be complied with and then, when the court made the above statement, he was thinking mostly of the return of the officer on the receipt and not the service of the copy of the warrant on the defendant.

In the case of Giles v. United States, 284 F. 208, 215, the Circuit Court of Appeals of the First District said:

"The return was also defective, inter alia, in that it does not show that 'a copy of the warrant together with a receipt for the property taken (specifying it in detail)' was given to the person from whom the property was taken as required by section 12, supra."

In the case of Murby v. United States, 293 F. 849, 852, the same court says:

"While in this warrant, supra, there is no express direction to the officer to give (or leave) such copy and receipt (plainly the better practice, Giles v. United States (C.C.A.) 284 F. 208, 215), there is a direction to the officer 'to do and report concerning the same as the law directs.' This direction was enough, but the return does not 'report' that the officer did 'as the law directs.' If, in fact, this provision (section 12) was complied with, the return should have shown it—affirmatively. If it was not complied with, the search warrant proceedings were void, and the evidence obtained thereby inadmissible. Paine v. Farr, 118 Mass. 74; Kent v. Willey, 11 Gray (Mass.) 368, 373; Gibson v. Holmes, 78 Vt. 119, 121, 62 A. 11, 4 L. R. A. (N. S.) 451; Turner v. Lowry, 2 Aikens (Vt.) 72, 75; Tubbs v. Tukey, 3 Cush. [Mass.] 438, 440, 50 Am. Dec. 744:

"Nowhere in this record is there anything to indicate compliance with this essential requirement of the statute. The presumption from the omission in the return is that it was not complied with. Besides, at the trial, although seasonable objection was made that the record failed to show compliance with section 12—no motion was made to amend the return in this respect. United States v. Kraus [D. C.] 270 F. 578; Rose v. United States [C.C.A.] 274 F. 245.

"The result is that the district court erred in admitting evidence of proceedings under the search warrant and concerning the liquor and containers seized. Cf., also, Hussey v. Davis, 58 N. H. 317; State v. [Spirituous] Liquors, 68 N. H. 47, 40 A. 398; State v. Whalen, 85 Me. 469, 472, 27 A. 348; Guenther v. Day, 6 Gray (Mass.) 490; Robinson v. Richardson, 13 Gray (Mass.) 454, 456, 458.

"This is enough to dispose of the case. It is therefore unnecessary, and we think undesirable, for us now to discuss and state conclusions on the other points argued as to the search warrant proceedings. It is enough to express our disapproval of the loose and careless practice out of which these questions arise, and to repeat—what in effect we have already stated—that if commissioners perform their duty of careful and conscientious compliance with the plain provisions of the Espionage Act [18 U. S. C. A. § 611 et seq.], no such problems as are now presented will hereafter arise in this circuit."

In the case of United States v. Yuck Kee (D. C.) 281 F. 228, 231, the court says:

"In view of the foregoing, it would seem unnecessary to determine whether the issuance, service, and execution of the search warrant in the case at bar were governed by title 11 of the Espionage Act, or by the common law. The requirements of both are the same. Examining the facts in the case at bar in the light of these requirements, we find that there was no foundation laid for a search warrant allowing a search in the nighttime, yet the warrant so directed and the search and seizure were in fact so made·

We find, further, that no copy of the search warrant was left with the person in possession; that no receipt was given for the goods taken. We find, further, that no inventory under oath was returned to the United States commissioner. Under this state of facts I am forced to the conclusion that the search warrant in the form in which it was issued was unauthorized and that, even if it had been issued in proper form, yet it was not legally served and executed."

See, also, Evans v. State, 54 Okla. Cr. 83, 14 Pac. (2d) 691; Key v. State, 43 Okla. Cr. 450, 279 Pac. 931; Seizure of Russo's Liquors, 189 App. Div. 109, 178 N. Y. S. 303; In re Ingalls, 77 Misc. 447, 137 N. Y. S. 780; People v. Wicka, 117 Misc. 364, 192 N. Y. S. 633.

The next question: Is it necessary that the search warrant be directed to an officer "in the county" where the search was made, or may it be addressed to any sheriff, constable, marshal or policeman in this state? The statute of this state, section 3225, O. S. 1931 (22 Okla. St. Ann. § 1225), provides:

"If the magistrate be thereupon satisfied of the existence of grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, signed by him, with his name of office, to a peace officer in his county, commanding him forthwith to search the person or place named, for the property specified, and to bring it before the magistrate, and also to arrest the person in whose possession the same may be found, to be dealt with according to law."

Section 3226, O. S. 1931 (22 Okla. St. Ann. § 1226), provides:

"The warrant must be in substantially the following form:

"County of ———.

"In the name of the State of Oklahoma. To any sheriff, constable, marshal or policeman in the county of ———."

It will thus be noted that the statute specifically states that the warrant should be directed to an officer of the county. If it is to be, then why should it not be directed to an officer of the county in which the search is to be made as the statute directs? Why should this clear provision of the statute be held to be directory? If it is to be so held, why should this provision have been placed in the statute? If the warrant is directed to any officer in the state it would be possible for the sheriff, constable, marshal, or policeman of one county to search the premises of a distant county, a people who had not elected him to office and to whom he owed no obligation.

In our opinion, this was the very reason that caused the Legislature of this state to enact this statute directing that the search warrant should be directed to an officer of the county where the search was to be made. It is not sufficient to say that the warrant was executed by a proper officer, as in the instant case. All of the authorities hold that the warrant should be executed by the officer to whom it is directed. Section 3227, O. S. 1931 (22 Okla. St. Ann. § 1227), provides:

"A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer, on his requiring it, he being present, and acting in its execution."

This court, in the case of Bishop v. State, 47 Okla. Cr. 249, 288 Pac. 363, 364, passed upon this identical question and held that, where a search warrant was directed: "The state of Oklahoma, to any sheriff [constable], marshal or

policeman," and was not directed to an officer in the county where the search was to be made, was error and the case was reversed. The court seemed to base this opinion upon the fact that the statute requires the search warrant to run in the name of the state and is process under the statute. While this may not be the best reason for the rule, yet we think the conclusion reached is proper and that the warrant was not in proper form because it was not directed to an officer of Ottawa county. As directed, any officer in the state could have served this warrant and made return thereon. We do not think the lawmaking power of this state so intended.

It is next contended that the search warrant nowhere provided that it should be served in the nighttime. Section 3230, O. S. 1931 (22 Okla. St. Ann. § 1230), provides:

"The magistrate must insert a direction in the warrant that it be served in the daytime, unless the affidavits be positive that the property is on the person, or in the place to be searched. In which case he may insert a direction that it be served at any time of the day or night."

It will be noted that the search warrant in the instant case had the words "in the daytime" in the printed form and these words were stricken by the justice of the peace who issued the warrant, but it nowhere directed that it be served "in the nighttime."

If this was the only error, we would not reverse this case for the reason that by striking out the words "in the daytime" shows an intention that it be served in the "nighttime," and the affidavit, being positive, gives the right under the statute for it to be served in "the nighttime," but we will say that it is certainly the best practice for the officer issuing the search warrant to give the

direction therein that it be served in the "daytime" or "nighttime," where the affidavit is positive. This is in accordance with the authorities of all courts, both federal and state. 24 R.C.A. p. 708, § 11; Cornelius on Search and Seizure, p. 369, § 148; 56 C. J. p. 1240, § 159; Giles v. U. S. (C.C.A.) 284 F. 208; U. S. v. Yuck Kee (D. C.) 281 F. 228; U. S. v Borkowski (D C.) 268 F. 408; U. S. v. Kaplan (D. C.) 286 F. 963.

For the reasons above stated, it is our opinion that the court should have sustained the motion to suppress the evidence obtained under the search warrant, and the same is reversed.

DAVENPORT, P. J., and DOYLE, J., concur.