## MRS. A. A. BUCKLEY v. STATE.

No. A-9601.   May 2, 1940.
(102 P. 2d 619.)

Baker H. Melone, of El Reno, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and S. T. Roberson, Co. Atty., of El Reno, for the State.

BAREFOOT, J. Defendant was charged in the county court of Canadian county with the crime of unlawful possession of five and one-half gallons of intoxicating liquor; was tried, convicted, and sentenced to pay a fine of $50, and to serve a term of 30 days in the county jail, and has appealed.

For reversal of this case it is contended:

"(1) That the court erred in permitting the introduction of testimony as to the reputation of the home of the defendant as a place wherein intoxicating liquors were kept for sale, without there having been laid the proper predicate as required by law for the introduction of such testimony.

"(2) That the court erred in permitting the introduction of testimony concerning an alleged sale of in-

toxicating liquor by defendant approximately three (3) months prior to the alleged commission of the offense in the instant case, and at a place entirely separate and apart from the home of the defendant where she was living on August 1, 1938."

These propositions may be considered together.

We do not consider it necessary to give in detail the evidence in this case, but will give only a brief statement thereof.

The defendant resided in the city of Yukon. Her husband had previously died. She occupied a "trailer" on a vacant piece of property. Previous to the time which she was charged on the 1st day of August, 1938, a trailer in which she lived had burned. She had secured a new trailer and the same was located on the same premises and about 60 feet west of the one previously burned. At the time of the charge against her she was working in the W. P. A. Sewing Room in El Reno.

Just after dark on the above date a search warrant had been secured by the officers of Canadian county, and four officers searched her premises. It is admitted by defendant that the search warrant was in proper form. As a result of the search five one-gallon jugs of corn whisky were found about two steps from the door of the trailer in the weeds with a rug thrown over the same. One-half gallon was found in the driveway just three or four steps from where defendant and several men who were at her home at the time of the raid were seated. Upon the approach of the officers three of the parties ran and were not apprehended by the officers. They testified for defendant, and their evidence revealed that they were under the influence of intoxicating liquor at the time of the search.

Defendant denied being in possession of the whisky or having any knowledge of it being there. There were

a number of witnesses for the state who testified that they lived in close proximity to the trailer occupied by the defendant; that upon many occasions they had seen parties going to and coming from the premises of defendant; that they would be intoxicated, and were talking in a loud and boisterous manner; that a C. C. C. Camp was located at Yukon, and many of these men were seen to go there and return late at night.

H. H. Flick testified that he lived about 225 feet south of where defendant lived, and had lived there for 30 years. For a year and a half or two years he had observed people going to and from the premises of defendant, many of them being boys from the C. C. C. Camp. He could tell them from the way they were dressed. He further stated:

"Q. What goes on there at that place with relation to various people going to and coming from there as to whether or not they are in a drunken state or semi-drunken state, or perfectly sober? A. I would say that those men go there and get, some of them, get pretty noisy and they have had one or two battles out there in the streets. * * * Q. They annoy your family? A. Yes, sir."

Arthur Odle, a member of the C. C. C. Camp at Yukon, testified that he lived there for 20 years, about one-half block from where defendant lived. He remembered her trailer burning in December, 1937. He lived with his mother. He further testified:

"Q. Now I will ask you whether or not you have observed situation there around the Buckley place with relation to comings and goings of various and sundry members of public and with C. C. C. Camp boys there? A. Well, at times it was a drunken brawl. * * * Q. What have you observed about that place within the past year with relation to comings and goings of different people? A. Well, more or less of different ones or same ones all the time of day made it point to go down there and come

away drunk, boys drunk and cursing. Q. How often did that occur? A. Well, more or less during the first part of the month. Q. Every month? A. Yes. Q. I will ask you whether or not you know of your own knowledge of any men there in camp who are accustomed to getting drunk habitually and on regular occasions go to Buckley place and buy whisky? A. I have noticed the same men I have worked with four years and I know they are habitual drunkards and they made it a point to hang around there, going to and coming from there. Q. Now have you noticed on occasions when they were there whether they were drunk or sober? A. I have noticed they were drunk when they come from there. * * * Q. Just tell this jury what the situation is with regard to noise and carousing that may go on there, if any? A. Well, it causes disturbances in our neighborhood, to our peace of mind. Q. Tell us what they do? What goes on? A. Quite a bit of hollering and walking around by this place, there is loud cursing and loud talking nights and day time. Q. That is aside from the drunkenness you have already explained? A. Yes. I have also been woke up at all hours of the night to answer to tell some stranger where this place was. * * * Q. Did this bother your mother? A. Considerable. Q. Bothered both of you? A. Yes, sir. Q. Did any other neighbors complain to you about this noise? A. Yes. Q. How long has this been going on? A. Well, every since they moved there more or less. Q. Ever since Mr. Buckley was there? A. Yes, sir. Q. And it continued since he left? A. Yes, sir."

William R. Hinkle testified as follows:

"Q. Are you acquainted with this defendant? A. Yes, sir. Q. About how long have you known her? A. Approximately about five months, or six. Q. Where do you live from where she lives? A. Straight west about a block and a half. Q. Did you ever buy whisky from her? A. Yes, sir. Q. When? A. Between the first and the third day of May. Q. Of this year? A. Yes. Q. Where were you when you bought it? A. I was at her house. Q. What kind did you buy? A. I don't know. I just know it was whisky that is all. Q. Was it corn whisky,

or bonded whisky? A. I would say it was corn whisky. Q. What did you pay her for it? A. I paid her 75 cents. Q. You bought it from her? A. Yes, sir. Q. There at her place? A. Yes, sir."

After the evidence was introduced the state recalled Deputy Sheriff Tony Kirkegard, Charley McClure, and Arthur Odle, and they testified that the general reputation of defendant's home as a place where intoxicating liquor was kept and sold was bad.

In support of defendant's contention, certain prior decisions of this court are cited to sustain the contention that the court erred in permitting the state to introduce evidence of the reputation of defendant's home. A careful reading of these cases reveals that when applied to the facts in the instant case they do not sustain the contention of defendant, but under their holding this evidence was admissible.

In the case of Lotta v. State, 30 Okla. Cr. 105, 235 P. 245; Yakum v. State, 30 Okla. Cr. 184, 235 P. 253; and Beatty v. State, 34 Okla. Cr. 418, 246 P. 1103, the general rule is announced that evidence of the general reputation of defendant's home as being a place where intoxicating liquors were sold is admissible, only upon the laying of a proper predicate showing that the home was a place of general or public resort. In the instant case that is exactly what the state did. Before the state introduced the evidence of the reputation of defendant's home, it was proved by at least three of her neighbors that her home was a place of public resort. This evidence has been heretofore quoted. The statute requires before a home may be searched that an affidavit shall be made for the securing of a search warrant, and further provides, Oklahoma Statutes 1931, section 2639, O. S. A., title 37, § 88, as follows:

"No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding house, or place for storage, or unless such residence is a place of public resort."

Under the above statute it does not necessarily mean that a place of business shall be conducted there, nor that a bar shall be set up, but if one uses his home as a place of storage of intoxicating liquors, wihch are stored with the intention of a violation of the liquor laws of this state, or if the home is used for permitting persons to come to the home for the purpose of purchasing liquor, either to be consumed upon the premises or for the purpose of purchasing and carrying away, it then becomes a place of public resort, as contemplated by the statutes. It was just this character of cases to which reference was made in the case of Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135, 138, when this court said:

"But with the passing of time a few of our citizens seem to forget the sacredness of their home and fireside and, in their eagerness to make money and in an effort to defeat the law, they have degraded their homes by bringing liquor and other instruments of crime therein for the purpose of using them in violation of the laws of this country, thereby hoping to receive protection through the sacred right of forbidding their homes to be searched, under the terms of the Constitution."

This court has often held that where one is charged with the unlawful possession of intoxicating liquor proof of prior possession of or previous sales are admissible to show the intent of the party charged. Hill v. State, 3 Okla. Cr. 686, 109 P. 291; Rice v. State, 5 Okla. Cr. 68, 113 P. 203, 207.

It has also been held that where a proper predicate was laid, proof of the reputation of the premises was

admissible, but that proof that defendant was a bootlegger was inadmissible. In the case of Ward v. State, 15 Okla. Cr. 150, 175 P. 557, 558, which is based upon the case of Wilkerson v. State, 9 Okla. Cr. 662, 132 P. 1120, the court says:

"The rule that evidence of the reputation of the place as being a place where intoxicating liquor is kept for sale may be established in a case where the defendant is charged with the unlawful possession of such liquors in such place, if such a place be one resorted to by the public for that purpose, is established in the former opinions of this court. The reason for the rule is thus stated in Kirk v. State, 11 Okla. Cr. 203, 145 P. 307:

" 'It is held in that case (Wilkerson v. State, 9 Okla. Cr. 662, 132 P. 1120), and uniformly in all cases where the offense charged was unlawful possession, that testimony tending to show that the defendant had previously sold other liquor, or kept other liquor for sale, is admissible on the question of intent, and if such liquors were kept at a place at which the public generally resorted, and the circumstances of the case indicated that such place was used for the purpose of selling intoxicating liquor, the general reputation of such place is admissible on the question of intent.'

"The reputation of the place as one where intoxicating liquors are kept for sale is an asset of trade, and as much a substantial element of the intent of the person who keeps liquors in such a place as is evidence that the place was fitted up with a bar and other fixtures and appurtenances of a liquor saloon. Intent to sell is as much an element of the offense of unlawful possession under our statute as is the intent to sell where the offense charged is the keeping and maintaining of a place where intoxicating liquors are received and kept for the purpose of sale. If the proof shows that possession of such liquors are in a place of public resort, why should not the reputation of such a place be admissible in either case on the question of intent to sell? This court has unequivocally held that the reputation of the place of

keeping may be proved, where the offense charged is maintaining a place for the purpose of sale. We see no good reason for admitting such evidence in that class of cases, and in excluding it in this class, where the facts show possession in a place of public resort. The same logic and reasoning that will support the theory upon which such evidence is held admissible in the former class of cases supports its admissibility in the latter."

In the Kirk Case, supra, the court further stated:

"The Attorney General contends that under the doctrine of the Wilkerson Case, 9 Okla. Cr. 662, 132 P. 1120, the general reputation of the defendants as to being bootleggers was competent and admissible. We do not assent to this contention. The Wilkerson Case was a prosecution for unlawful possession with intent to violate provisions of the prohibitory law. It is held in that case, and uniformly in all cases where the offense charged was unlawful possession, that testimony tending to show that the defendant had previously sold other liquor, or kept other liquor for sale, is admissible on the question of intent, and if such liquors were kept at a place at which the public generally resorted, and the circumstances of the case indicated that such place was used for the purpose of selling intoxicating liquor, the general reputation of such place is admissible on the question of intent."

In a number of cases, in discussing the question of the sufficiency of the search warrant to enable the officers to search the private residence of a defendant, it has been held that the description as being a "place wherein persons congregate to drink liquor" is sufficient to search the place as one of public resort. Mitchell v. State, 43 Okla. Cr. 63, 277 P. 260; Jay v. State, 42 Okla. Cr. 32, 274 P. 487; Cudjo v. State, 34 Okla. Cr. 199, 245 P. 906.

For the reasons above stated, the judgment of the county court of Canadian county is affirmed.

DOYLE, P. J., and JONES, J., concur.