## BARNETT v. STATE.

No. A-11868.   June 14, 1951.

(232 P. 2d 660.)

H. R. Helmbrecht, Ponca City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J. Larry Barnett was charged in the county court of Kay county with the possession of intoxicating liquor, was found guilty by a jury and his punishment fixed at 30 days imprisonment in the county jail, and a fine of $250. Motion for new trial was overruled, and defendant duly filed his appeal.

In his brief, defendant argues two propositions for reversal. First, that the court committed error in overruling defendant's motion to suppress the evidence; in permitting the state to introduce certain evidence over the objection of the defendant; in overruling the defendant's demurrer to the evidence; refusing defendant's motion for requested instruction to find the defendant not guilty; and in refusing to declare a mistrial. The second proposition is that the court committed error in refusing to give defendant's requested instruction.

The basis of the motion to suppress the evidence was that the search warrant was a "John Doe" warrant, was a blanket search warrant, and "that said warrant does not run in the name of the State of Oklahoma 'State of Oklahoma to'."

This court has many times held that the name "John Doe" may be inserted in a search warrant when the name of the owner of the premises to be searched is unknown to the person making the affidavit to procure warrant. Bowdry v. State, 82 Okla. Cr. 119, 166 P. 2d 1018.

The property to be searched was described as "The south half of the lower floor of a two-story building, painted white, facing east, located at, and known as 318 South Second Street, in Ponca City, in Kay County, Oklahoma." The search warrant served is attached to the motion to suppress, and made a part thereof. It is the contention of the defendant that the description covers more than one place, or home. The floor plan, or what is designated as a building survey of the apartment house located and known as 318 South Second street, was introduced. Defendant used but one witness, Mrs. Clem Carr, on the motion to suppress. Mrs. Carr lived in the north downstairs apartment of this building, and on cross-examination testified: "Underneath of the stairs is in my apartment; has a little cubbyhold from the clothes closet in my side, that makes the south apartment smaller than the north, the way the stairway is put in there." It was also shown by the drawing and the testimony of Mrs. Carr that the bedroom of the south apartment was a little smaller than the one on the north side, the stairway opening leading to the second floor taking up more space from the south apartment than it did from the north. There was no opening between the small closet referred to by Mrs. Carr as a "little cubby hole" and the south apartment.

Ingress and egress to the north and south apartments were by separate entrances. At the time of the raid it was impossible for anyone to enter either apartment from the other. Mrs. Carr, who occupied the north apartment, did not know when the raid was in progress. There was no evidence that the officers attempted to enter her apartment. The fact that a closet from the north apartment took up the space under the stairsteps leading to an upper floor from the outside and which steps were not in the exact mathematical center of the building but took more space from the south apartment, and thus gave the north apartment occupant a small space over the exact center line of the building and to the south, could not justify defendant's contention that the search warrant covered two apartments. The argument that the facts as recited rendered the search warrant a blanket warrant is being technical in the extreme and ignores the reasons for the rule against blanket warrants. Here there were two distinct apartments, one a north apartment, and the other a south apartment. The rule is that a search warrant must so particularly describe the place to be searched that the officer to whom it is directed may determine it from the warrant, and no discretion as to the place to be searched should be left to the officer. Certainly the officer could without the least difficulty determine from the warrant in question and the pertinent portion heretofore quoted, the place to be searched. It would have been ridiculous for him to have claimed the right to go into another separate apartment, being the north apartment, and search part of a closet that he might have discovered from a mathematical calculation protruded past the exact center of the building to the south. The motion to suppress was properly overruled.

The heading of the search warrant served on the defendant and attached to the motion to suppress, is as follows:

"In the Justice of the Peace Court before Joseph Davies, Justice of the Peace in and for Kay County, State of Oklahoma.

"Search Warrant

"State of Oklahoma, County of Kay: ss

"In the name of The State of Oklahoma    To any Sheriff, Constable, Marshal or Policeman in the County of Kay, Greeting:"

Art. VII, § 19 of the Constitution of Oklahoma provides that "The style of all writs and processes shall be 'The State of Oklahoma.' "   And Tit. 12 O. S. A. § 51, contains the same wording, but Tit. 22 O. S. A. § 1226 "Form of search warrant" provides:

"The warrant must be in substantially the following form:
"County of ........................................................

"In the name of the State of Oklahoma.   To any sheriff," etc. Which is the exact wording of the search warrant here involved.

The motion to suppress was heard on November 22, 1949, and the court entered an order the same day overruling the motion.   We conclude from the record that this ruling was correct.

The case proper came on for trial on December 1, 1949, and the state used two witnesses, but the defendant did not offer any evidence.   He did not offer his evidence introduced on motion to suppress.

C. J. Greer, Chief Detective of the Police Department, Ponca City, was the first witness, and at the very outset of his examination, the county attorney, over the objection of the defendant, offered the search warrant, with the return thereon showing that 51 1/2 pints of assorted whisky, wine and gin were found.

This court has repeatedly held that it is error for the court to permit the state to introduce the search warrant as primary evidence, where the recitals of such warrant are with reference to the essence of the offense charged.   In Savalier v. State, 85 Okla. Cr. 87, 185 P. 2d 576, 477, we said:

"So far as we are advised, this Court has in every instance where such question has been raised, reversed the conviction of the accused and held the admission of a search warrant as independent evidence of defendant's guilt was prejudicial error. [See cases cited.]"

And see also Edwards v. State, 90 Okla. Cr. 211, 212 P. 2d 150, and Foster v. State, 90 Okla. Cr. 242, 213 P. 2d 290.

Objections were interposed to the court permitting the two officers testifying for the state to testify as to the reputation of defendant's place as a place where liquor could be purchased.

The court did not err in admitting such evidence.   See Buckley v. State, 69 Okla. Cr. 285, 102 P. 2d 619, where we held:

"When evidence is first offered by the state to establish the fact that one's private residence is being used as a place of storage of intoxicating liquor for the purpose of sale, or is being used as a place of public resort, it is then permissible for the state to introduce evidence to show the general reputation of the premises, where the owner thereof is charged with the unlawful possession of intoxicating liquor.

"Where one is charged with the unlawful possession of intoxicating liquor, proof of prior possession, and prior sales, where not too remote, may be shown for the purpose of establishing the intent of the party charged."

On cross-examination of the witnesses, defense counsel inferentially attempted to indicate that the liquor obtained in the raid belonged to the de-

fendant's wife, because she inventoried the liquor. The evidence did show that the defendant was present before the raid was completed, and that he and his wife did live in the apartment raided. To counteract this move the county attorney asked officer Greer: "Have you had any talks with the defendant on any later occasions? A. Yes. I've been at the place once since then." The officer over the objection of defense counsel went on to say that they conducted another raid, but did not find any whisky and that defendant told them he had gone out of business.

While the statement of defendant to the officials that he had gone out of the whisky business was admissible and could be treated in argument to the jury that he had theretofore been in the whisky business, the remarks of the officer concerning a subsequent raid was not competent evidence, and the statement should have been limited to what the defendant told him at a subsequent date concerning his activities with reference to the sale of intoxicating liquor. This error, however, under the peculiar circumstances of this case, is not sufficient alone to cause a reversal of the case.

The county attorney in effort to prove that the defendant did live at the address in question introduced the Ponca City telephone directory of July, 1949. In the recent case of Seay v. State, 93 Okla. Cr. 372, 228 P. 2d 665, this court held such evidence to be hearsay and inadmissible. However, the evidence in this case, eliminating the telephone directory, was sufficient to make a prima facie showing that defendant did live in the apartment raided. He did not testify or offer evidence to the contrary.

Counsel submitted a requested instruction in which the jury would be required to find the defendant not guilty if they should find that the wife exercised dominion and control over the whisky by reason of making an inventory of the same. The court correctly refused to give such an instruction. The evidence disclosed that defendant was present before the raid was over. The husband is deemed head of the household. The fact that the wife inventoried the whisky taken did not constitute a wrong and was not sufficient to show that she was acting independently of her husband and that the liquor belonged to the wife. This did not, standing alone, relieve the husband of the responsibility for such a quantity of whisky being kept in his home. See Sentell v. State, 61 Okla. Cr. 229, 67 P. 2d 466, wherein this court treats this subject is detail.

We are, however, by reason of the introduction of the search warrant in evidence, compelled to send this case back for a new trial.

Accordingly, this case is reversed and remanded and the defendant is grasted a new trial.

BRETT, P. J., and JONES, J., concur.