## SCALES v. STATE.
### No. A–11950.

Criminal Court of Appeals of Oklahoma.
April 28, 1954.

Ed Shipp, Idabel, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error, Gervassie Scales, was tried before a jury in the county court of McCurtain County on a charge of unlawful possession of intoxicating liquor, was convicted, and her punishment fixed at a fine of $250 and confinement in the county jail for ninety days.

There is but one point raised requiring the attention of this court, and being "That the verdict is contrary to the evidence, and the court erred in overruling the defendant's motion for the court to instruct the jury to return a verdict of not guilty."

On reading the briefs for the appellant, who will hereafter be referred to as defendant, and the brief for the State, our first impression was that the case should be affirmed without opinion as provided by Chapter 15, S.L.1953, § 2, amending Tit. 12 O.S.1951 § 976 and Tit. 20 O.S.1951 § 47. After a careful reading of the record we discover a difficult case.

The State used but one witness, T. V. Wake, deputy sheriff, who testified that the defendant lived in that part of Idabel occupied by colored people, that on Saturday afternoon the 31st day of January, 1953 he went to the defendant's home, rang a bell at the front door and was admitted by the defendant; that he served a copy of a search warrant on defendant; that she wheeled and ran through the dining room and on through the kitchen and into her mother-in-law's bed room; that there were ten or twelve other people, both men and women, in the house and that she hollered, "pour out the whiskey"; that as he passed through the kitchen when chasing the defendant he observed on the kitchen cabinet a quart bottle of "wildcat" whiskey "with about that much gone out". The record fails to show the amount "gone out". Witness further testified that defendant fell on a feather bed and got her hands on each end of the mattress and folded it over, and that he wrestled with her and found a pint of gin in the bed.

On cross-examination witness was asked how he knew that the jar that he observed on the kitchen cabinet contained whiskey, and he stated that when he got back from his tussle with Gervassie he smelled whiskey in the sink. He stated there was a quart jar on the cabinet when he returned, stuffed with dish rags, and that it did not smell of whiskey as it had apparently been washed out with a disinfectant. He said that he did not see anyone pour out the contents of the jar that he observed while chasing the defendant through the kitchen, and did not stop to taste or smell the contents of the jar. Thus the evidence that the jar he first saw contained whiskey was strictly circumstantial. Ordinarily "wildcat" whiskey has much the appearance of water. There was proof of the discovery of the pint of gin in the bed of the mother-in-law of the defendant, and that defendant had exercised control over it.

■ So far as the record discloses as to the amount discovered, it does not even circumstantially show that there was a quart or more of intoxicating liquor discovered in the home of the defendant, as the amount gone out of the jar, if it is assumed that the jar contained whiskey, is not disclosed by the record, so that the quantity of liquor actually shown to have been discovered (being less than one quart), was insufficient in amount to make out a prima facie case of possession with intent to sell. Tit. 37 O.S.1951 § 82. And in that it is not against the law to have possession of intoxicating liquor for one's own personal use, but is against the law to have possession with intent to sell, barter, give away or otherwise furnish in violation of the statute, Tit. 37 O.S.1951 § 1, it was incumbent on the State to introduce further evidence in an attempt to establish the unlawful intent with which the possession was had.

■ For the purpose of the demurrer, the question is, Did the State meet this burden? What circumstances were developed by the State in making out its case, that would tend to support "possession with intent to sell"? Would her yelling, "pour out the whiskey" be sufficient? It certainly would indicate that she was acting surreptitiously by reason of her shouted words to others present in her home. But the way was open for the State in meeting its burden of establishing the unlawful intent with which the possession was had, to have shown that the place where the whiskey was found was a place of public resort and that it had the general reputation of being a place where intoxicating liquors were sold. King v. State, 81 Okl.Cr. 278, 163 P.2d 248; Thomas v. State, 70 Okl.Cr. 404, 106 P.2d 836; Winton v. State, 50 Okl.Cr. 1, 295 P. 400; Eastridge v. State, 57 Okl.

Cr. 323, 48 P.2d 869; Reed v. State, 24 Okl.Cr. 305, 217 P. 1058; Buckley v. State, 69 Okl.Cr. 285, 102 P.2d 619.

Further, the fact that there were a number of men and women present, standing alone was not evidence of law violation. The State should have shown some conduct on the part of those present to indicate that they had been consuming liquor, such as standing around, drinking from containers, the odor of intoxicating liquor, and particularly on the breaths of some or all of such persons, or stated conduct on their part indicating that they were under the influence of liquor, such as boisterousness, staggering, or other unusual conduct. In this the State failed, and the demurrer to the evidence of the State should therefore have been sustained.

On defendant's demurrer being overruled, she testified and claimed that the only liquor actually in the house was the pint of gin which she swore belonged to her husband, shown to have been living with her but who at the time was in Idabel at the place of his employment.

Defendant admitted on cross-examination two past convictions for violating the prohibitory liquor laws, but claimed that she no longer sold whiskey. She explained the presence of her visitors as mostly relatives; that there were but five or six visitors, and that she had cooked for a church dinner that day and the people present were assisting in washing the dishes. She denied that the jar observed by the officer as he ran through the kitchen contained liquor. She claimed that she ran to hide her husband's pint of gin, which was in open sight on his mother's bed, and that when the officer followed and wrestled with her, she yelled, "Mamma, pour out the whiskey in there" in order to get him to leave her and get his attention drawn away from the pint of gin that she was attempting to hide.

Defendant introduced other evidence to contradict the testimony of the officer; all of her witnesses said there were but five or six visitors, who were helping wash pots, pans and dishes from a church dinner; she and her witnesses denied that there was any whiskey in the kitchen in a jar as testified to by the officer. They testified that they had not seen anyone drink any liquor there prior to the search.

The evidence taken as a whole would have been sufficient to sustain the verdict and judgment, but by reason of failure of the State to make out a prima facie case, the defendant's demurrer to the State's evidence should have been sustained. Thus the evidence following the demurrer may have no bearing on the question of the sufficiency of the State's evidence in the first instance. The case must therefore be, and the same is reversed and remanded with directions to dismiss.

JONES and BRETT, JJ., concur.