Dewey P. SHOCKEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–169.

Court of Criminal Appeals of Oklahoma.

June 25, 1974.

Don Ed Payne, Hugo, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., William Thiebaut, Jr., Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Dewey P. Shockey, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Choctaw County, Case No. CRF–73–15, of the crime of Larceny of Domestic Animals in violation of 21 O.S.1971, § 1716. He was sentenced to serve a term of ten (10)

years imprisonment in the state penitentiary in accordance with the verdict of the jury and a timely appeal has been perfected to this Court.

At the defendant's trial Melvin Houchen testified that it was his duty to care for certain cattle belonging to his son-in-law, Raymond Forbus. He testified that he tended those cattle during the late afternoon of January 1, 1973. He returned to the pasture to feed the cattle again on the afternoon of January 2, 1973 and discovered that three white faced cows and three bull calves, two white faced and one black motley faced, were missing. The feed left the previous day for those cows had been entirely eaten. The day was a wet one and Mr. Houchen discovered on the muddy ground a number of tire impressions which he covered with burlap sacking to preserve them. He also found footprints in the area of a loading chute and a gate on the ramp of that chute had been torn loose. Mr. Houchen then called the county sheriff's office. As a result of the investigation thus initiated, the missing animals were located in the possession of a Mr. Ralph Crane in Perkins, Oklahoma. Mr. Houchen was taken to that location by Casey Moser, Undersheriff of Choctaw County, and Paul Wade, an investigator for the Southwestern Cattlemen's Association, and there identified the three cows and two of the calves.

Undersheriff Moser testified that he and Paul Wade of the Southwestern Cattlemen's Association jointly investigated the disappearance of the cattle reported by Houchen. During the course of that investigation he made a comparison of the tire impressions found at the scene and the tires of the defendant's pickup truck and determined that the impressions had been made by the same type of tires as those on that truck.

Mrs. Tommy Cross testified that she was an owner and operator of the Chandler Livestock Auction. She testified that on January 2, 1973, she issued a check to Dewey P. Shockey in the amount of Nine Hundred Eighty-Five dollars and five cents ($985.05) as payment for three white faced cows and their calves. She further testified that the defendant Shockey gave his address for the purpose of that transaction as McLoud, Oklahoma. Those three cows and their calves were subsequently sold to Mr. Ralph Crane.

Ralph Crane testified that on January 2, 1973, he purchased at the Chandler Livestock Auction, three white faced cows and their calves, two white faced and a motley faced. He was subsequently contacted by a member of the Choctaw County Sheriff's Office and Paul Wade and informed them that he still had those animals in his possession. He was present when Mr. Houchen identified those animals.

Raymond Forbus testified that he was the owner of the cows in question and that he gave nobody permission to take them.

The defendant testified in his own behalf stating that the cattle he sold on January 2, 1973, at the Chandler Livestock Auction, were his own. He stated that he purchased two of the cows in March of 1972 from one Bobby Coker and the third cow in May of 1972, from one Jerry Woods. He explained that he had driven the 300 miles to the Chandler Livestock Auction rather than selling his cows locally because he believed he would get a better price there. He explained that he gave his address as McLoud, Oklahoma in the course of that transaction because he believed local animals would receive a better price. He explained that he opened a new checking account at the Durant Bank because he planned at some time in the future to move to Durant.

Bobby Coker, former brother-in-law of the defendant, testified that he had in the past sold cows to the defendant but could not remember the time of the transaction.

Jerry Woods, called as a defense witness, was asked if he had ever sold any cattle to the defendant and refused to answer invoking his Fifth Amendment privilege against self-incrimination. Woods was thereupon granted immunity from

prosecution and called in rebuttal as a witness for the State. He testified that he had told investigators that he had never in his life sold Dewey Shockey a white faced cow and that he signed a bill of sale for such a cow at Shockey's request because Shockey told him he was in trouble and needed the bill of sale for a cow.

▮ In his first proposition the defendant contends that the trial judge erred by overruling his demurrer to the State's evidence and by refusing to grant his motion for a directed verdict of acquittal. In Smith v. State, Okl.Cr., 509 P.2d 1391 (1973), this Court in specifically overruling the earlier holding of Scales v. State, Okl.Cr., 270 P.2d 378 (1954), stated:

"a defendant by offering evidence after a denial of a motion for acquittal waives that motion and thereafter the question of the sufficiency of the evidence to sustain a conviction is to be determined by an examination of the entire record."

The defendant in the instant case waived his right to challenge the ruling on his demurrer to the evidence and his motion for a directed verdict of acquittal. In accordance with the rule announced in *Smith,* we have reviewed the entire record of the testimony adduced at the defendant's trial and conclude that it contains competent evidence sufficient to support the jury's finding of guilt. The defendant complains particularly that evidence taken in the best light for the prosecution shows no more than possession of recently stolen property and that there is no evidence connecting him with the original taking of the stolen animals. For reversal on this point, he relies upon the language of this Court in Underhill v. State, 70 Okl.Cr. 39, 104 P.2d 447 (1940), stating:

"It is true that the possession of recently stolen goods is a strong circumstance to be considered in a larceny prosecution; but the possession of stolen property alone, and without any additional testimony, will not sustain a charge of larceny. It may be slight and wholly circumstantial, but there must be some evidence to connect the defendant with the original asportation. When the State does not have this proof the accused should not be charged with larceny, but with the offense of receiving stolen property." 104 P.2d at 449

It is abundantly clear from the recitation of the foregoing facts that this case is not one in which a conviction of larceny is predicated solely upon mere possession of property previously stolen. There was supplementing evidence which, though circumstantial, was sufficient to permit the jury to properly and reasonably draw the inference the defendant had taken the cows in question with the intent of permanently depriving their owner of them and that he was guilty of the charge of Larceny of Domestic Animals. See Turman v. State, Okl.Cr., 522 P.2d 247 (1974). The tire impressions left at the scene matched the type of tires found on defendant's pickup truck. The defendant sold the cows in question within 24 hours after the time they were taken. The defendant's testimony that the cows sold were his own and had belonged to him for a period of several months prior to their sale, was rebutted by the testimony of Jerry Woods who stated that he gave a bill of sale to the defendant because he stated he was in trouble and needed a predated bill of sale for a cow. The evidence was sufficient to make the question one for the jury. In a case in which competent evidence appears in the record from which the jury may reasonably and properly find the defendant guilty, the weight, credibility and probative value of such evidence is for the jury's determination and is not within the province of the Court of Criminal Appeals.

▮ The defendant next asserts that the trial judge erroneously abused his discretion in permitting the State to treat its own rebuttal witness, Jerry Woods, as a hostile witness subject to the tactics of cross-examination. It is significant that Jerry Woods was first called as a defense witness. In response to defense counsel's inquiry into whether he had sold cattle to

the defendant, he invoked his Fifth Amendment privilege against self-incrimination. He was called as a State's witness only after having been granted immunity from prosecution by the trial judge. His initial responses to material prosecution questions demonstrated extraordinary and frequent lapses of memory. Among those responses were statements in conflict with previous statements made to investigating officers. Over the objections of defense counsel, the trial judge acceded to the prosecution request that Woods be declared a hostile witness subject to cross-examination. Under the circumstances of this case we do not find that the judge abused his discretion in so doing.

In his third proposition the defendant contends that he was denied a fair trial because the trial judge refused the admission into evidence of certain photographs of cattle in the pasture at which Mr. Houchen identified the stolen cows. This proposition is wholly without merit. The prosecution's objection to the introduction of the photographs upon the grounds of relevancy was properly sustained. The person who took the contested photographs some months after Mr. Houchen's identification testified that he did not know whether the animals in the pasture at the time the photographs were taken were the same number and type of cattle as those which were present when the identification was made. Langley v. State, 90 Okl.Cr. 310, 213 P.2d 886 (1950), is determinative of this issue. We stated in that case:

"The probative value of photographs depends upon their accuracy. They must be shown by extrinsic evidence to be faithful representations of the place or subject, as it existed at the time involved in the controversy."

The defendant asserts in his final proposition that the punishment of ten years imprisonment is excessive and must be modified. As we have often stated the question of whether punishment is excessive must be determined by a study of all the facts and circumstances of the particular case. This Court does not have the power to modify a sentence unless under those facts and circumstances the sentence is so excessive as to shock the conscience of the Court. Schneider v. State, Okl.Cr., 501 P.2d 868 (1972), Moore v. State, Okl. Cr., 501 P.2d 529 (1972). We find nothing in the instant record which would justify this Court in reducing the sentence imposed upon the defendant. For the above and foregoing reasons we are of the opinion that the judgment and sentence appealed from should be, and the same hereby is, affirmed.

BLISS, P. J., and BUSSEY, J., concur.