### REX FLEMING v. STATE.

No. A-9259.   Oct. 1, 1937.
(72 Pac. 2d 403.)

W. Lee Johnson and Dan Mitchell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Carl D. McGee, Co. Atty., for the State.

BAREFOOT, J.   The defendant, Rex Fleming, was charged by information in the county court of Pawnee county with having the unlawful possession of intoxicating liquors, was tried, convicted, and sentenced to serve a term of six months in the county jail and pay a fine of $500.   From this judgment and sentence he has appealed.

The first error urged is that the court erred in refusing defendant's challenge of prospective jurors after all the defendant's peremptory challenges had been used.

This alleged error is based upon the fact that one of the prospective jurors by the name of Eyler, who was

a regular bailiff in the court, was drawn upon the regular jury panel, and, while being examined as to his qualifications, and in the presence of other members of the jury, said: "If he had as much whisky as they say he had out there, I would say he was guilty." This juror did not serve upon the panel, and we do not think that this statement was such prejudicial error as to cause a reversal of this case. The record does not show what questions were propounded to this juror. The trial court heard all of the questions and answers and in the exercise of a sound judicial discretion, which this court will not set aside unless it is shown that the court clearly abused this discretion.

It is further contended under this assignment of error that the court erred in failing to sustain the challenge to the juror Roe. This juror testified in answer to questions by counsel for defendant, if he did not "remember the case of about December 23, last year a raid was made and about 100 cases of liquor was seized." The juror in answer to this question said that he had heard a discussion and read an article about it in the local paper; that he and the editor of the paper were close friends and he then testified as follows:

"Q. When you read the facts in that newspaper you naturally believed them? A. As far as the newspaper report was concerned I did. Q. And you believed that that editor was competent to give dates and names of persons and places? A. Well, I really don't know that he got the news. Q. But coupling the newspaper account together with what you heard and saw on the streets, then and since then, you formed an opinion of the major facts, didn't you? A. Newspaper facts only. Q. You formed an opinion that a raid was made on the Water's place that day? A. As far as newspaper facts were concerned, I did. Q. You believed that a raid was made? A. Yes, sir. Q. And you believe that about a hundred cases of

liquor were siezed? A. Only as they were reported. Q. And you believe that Rex Fleming was the man? A. Only as it was reported. I never saw him before right now. Q. Nothing has happened since then to change your mind? A. That he was arrested? Q. Yes, that he was arrested and a seizure made? A. No. Q. You didn't make your opinion from the article you read? The Court: Before we pass on that we will give the state a chance to question the juror for the record. Mr. McGee: Mr. Roe, at this time, do you have any opinion as would take evidence to remove, as to the guilt or innocence of this defendant? A. No, sir. Mr. McGee: That is the only question I wanted to ask. The Court: You think you could sit and give this defendant as good a trial as if you had never heard of this case? A. Yes, sir."

The witness further testified that he was an aggressive prohibitionist and said:

"Q. Are you an officer of any organization that has prohibition its main interests, that is, the W. C. T. U. and Anti-Saloon League? A. I don't know that I am now. I have been a member of the W. C. T. U. Q. Over what period of time has it been since you were a member of the W. C. T. U.? A. Oh, it has been two years. Q. Have you ever been a member of the Anti-Saloon League? A. No, sir. Q. Mr. Roe, I believe you said from what you had heard and read about this case that you had formed some opinion about what happened out there? A. No, I don't believe I made that statement. Q. You did say that you did believe the newspaper account to be an accurate account of the raid? A. I don't believe I used the word 'accurate.' Q. I will ask you now if it isn't true that you placed such credence in this newspaper report that you believed it was an accurate report of the raid? A. Yes, sir. Q. You believe that at this time the raid was made and the defendant taken into custody for having several cases of liquor? A. Yes, that was the newspaper report and I believe it."

A newspaper article which the juror read was introduced in evidence and was as follows:

"One of the biggest liquor raids in this county for several years was made Monday by the Pawnee county sheriff's office when 106 cases of bonded liquor was seized at the home of Rex Fleming, living about two miles east of Pawnee. Fleming, who was alleged to have been the owner of the liquor was taken into custody at the time the liquor was seized. Fleming has been operating a filling station for the past several months about one mile west of Pawnee on Highway 64 but has maintained his residence east of the city."

We have carefully read the cases cited in defendant's brief to sustain his contention. They are: Scribner v. State, 3 Okla. Cr. 601, 108 Pac. 422, 35 L.R.A. (N.S.) 985; Tegeler v. State, 9 Okla. 138, 130 Pac. 1164; Turner v. State, 4 Okla. Cr. 164, 111 Pac. 988; Morehead v. State, 12 Okla. Cr. 62, 151 Pac. 1183, Ann. Cas. 1918C, 416; Leard v. State, 30 Okla. Cr. 191, 235 Pac. 243; Johnson v. State, 1 Okla. Cr. 321, 97 Pac. 1059, 18 Ann. Cas. 300; Elkins v. State, 29 Okla. Cr. 175, 233 Pac. 491.

A reading of these cases will readily show that they do not sustain the contention of defendant that the court erred in overruling the challenge to the juror in this case, but on the other hand clearly demonstrate the court was not in error in overruling the same. In the Scribner Case ten of the prospective jurors testified they had heard of the case from those who knew the facts therein and had fixed opinions as to the guilt of the defendant. In the Tegeler Case the prospective jurors said they had a fixed opinion as to the guilt of the defendant and this was also true in the Morehead Case. In the Turner, Leard, Johnson, and Elkins Cases, this court, in the strongest language possible, holds that a juror is not disqualified by reason of reading newspaper accounts of the crime charged or from current rumors, where the juror says he can and will give the defendant a fair and impartial trial, that

the competency of the juror is addressed to the sound discretion of the trial court, and that, unless it is clearly shown that this discretion has been abused, it will not be set aside. The statutes of this state, Okla. Stats. 1931, sec. 3000, Okla. St. Ann., title 22, § 662, provide:

"In a challenge for implied bias, one or more of the causes stated in the second preceding section must be alleged. In a challenge for actual bias, the cause stated in the second subdivision of the third preceding section must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge may be oral, but must be entered upon the minutes of the court."

In construing the above statute, the court, in the case of Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719, 726, says:

"An examination of the testimony of these jurors, given on voir dire, shows conclusively that the opinions which they formed, and that one juror says he may have expressed, were founded upon the reports which they had read in the newspapers. Intelligent men take newspaper accounts as current news, liable to qualification, explanation, or contradiction, and, when qualified, explained, or contradicted, they change their opinions or belief, accordingly as a matter of course. The opinions of the jurors here were such opinions merely as intelligent men almost irresistibly form from reading newspaper accounts of crime, relying upon the truthfulness of the published accounts which are always subject to be changed and altered by contradictory accounts. Such opinions rarely disqualify intelligent men from fairly considering the evidence given on a trial and rendering an impartial verdict there-

on when called upon to act as jurors. Nine-tenths of the intelligent taxpayers of the county, where a homicide has taken place, and the facts and the circumstances attending it have been published in the newspapers, would be disqualified as jurors, if the objections raised in this case were well founded. All of them would read the accounts or hear the facts detailed by some one who had read them, and most of them would form just such opinions, or get just such impressions as the jurors had in this case.

"Under our statute, the mere expression of an opinion by a juror in common conversation, without anything to show ill will, hostility, or a fixed determination of belief, is not a legal ground of challenge for cause. In order to disqualify the juror there must be 'the existence of a state of mind on the part of the juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging.' Section 5858, Rev. Laws 1910 [22 Okla. St. Ann. § 659, St. 1931, § 2997].

"The issue raised upon a challenge for cause to a juror in a criminal case, on the ground that he has formed an opinion founded upon rumor, statements in public journals, or common notoriety, and upon which he has expressed an opinion, is one of mixed law and fact; and the finding of the trial court upon the issue ought not to be set aside by a reviewing court, unless it appears that upon the evidence the trial court ought to have found that the juror had formed such an opinion that he could not in law be deemed impartial. Ex parte Spies, 123 U. S. 131, 8 S. Ct. 22, 31 L. Ed. 80; Holt v. U. S., 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138."

Chief Justice Marshall of the Supreme Court of the United States, in Burr's Trial (United States v. Burr), Fed. Cas. No. 14,692g, correctly states the rule of law in such cases as follows:

"Light impressions which may fairly be supposed to yield to the testimony that may be offered, which may

leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror, but those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him."

We do not think under the facts as above set forth that the court erred in overruling the challenge to the juror.

It is next contended that the punishment assessed by the jury against this defendant is excessive and for this reason should be reduced. He was given the maximum punishment provided by the statute, a fine of $500 and a term of six months in jail. This court, under the law, has authority to reduce the sentence and has in many instances done so where the ends of justice demanded it. The cases relied upon by defendant to support his contention that the judgment in this case is excessive are: White v. State, 33 Okla. Cr. 428, 244 Pac. 450; Smithers v. State, 36 Okla. Cr. 135, 251 Pac. 751; Coram v. State, 42 Okla. Cr. 219, 275 Pac. 1070.

It will be noted that in the White Case the defendant was charged with the possession of 12 pints of whisky which were in a car in front of defendant's home. The judgment was reduced from the maximum punishment to a fine of $200 and 60 days in jail. In the Smithers Case a young clerk in a drugstore was convicted of the possession of two gallons of whisky and the jury discharged the proprietor. The judgment was reduced from a fine of $200 and 60 days in jail to a fine of $50 and 30 days in jail. In the Eckhardt Case, 38 Okla. Cr. 404, 262 Pac. 708, the defendant had possession of a half gallon of whisky in a car. The sentence was reduced from a $500 fine and six months in jail to $50 and 30 days in jail. In the Coram Case the defendant was convicted for the pos-

session of three one-half gallon jars of whisky which were buried in a field. The judgment was reduced from a fine of $500 and six months in jail to a fine of $250 and 60 days in jail.

In the instant case the defendant was convicted of the possession of 104 cases of whisky, brandy, and alcohol. This would be 2,496 pints. It was of different brands, such as Cream of Kentucky, Wilkin's Family, Seagram's, Old Quaker, Invader, Golden Wedding, Windsor, Mint Springs, and other brands, all bonded liquor. This liquor was found in the basement of the home of defendant, most of it in original packages, and some of the cases broken and on a table. The defendant owned and operated a filling station in close proximity to his home where it is easy to conclude he was selling and disposing of the liquor and using his home as a place of storage and public resort. The evidence reveals that other parties were at the home of defendant at the time the search was made and that his wife was also present. This court has recently had occasion, in passing upon the validity of search warrants to search the homes of the citizens of this state, to call attention to the sacredness of the home and directing that the officer of the law should be as vigilant in the protection of the home as he was in enforcing the law. McHenry v. State, 61 Okla. Cr. 450, 69 Pac. 2d 90, and Denton v. State, 62 Okla. Cr. 8, 70 Pac. 2d 135. But as stated in the case of Denton v. State, where the defendant has so degraded his home by bringing liquor and other instruments of crime therein for the purpose of using them in violation of the laws of this country, hoping to receive protection through the sacred right of forbidding their homes to be searched under the terms of the Constitution, then this practice should be swept away to the end that the law may be enforced and the guilty

punished. We have the defendant in possession of an enormous amount of bonded, tax-paid whisky, many different brands, using the home as a place of storage and public resort, in the very presence, and, no doubt, with the knowledge and consent, of his family, where it was an easy matter for the young manhood and womanhood, and the older ones of the community, and the passing stranger to resort for the purpose of purchasing and drinking intoxicating liquor. It is just such a place as causes those who enter to become in such condition that their driving of an automobile or truck upon the public highway makes them a menace to the public safety. It was no doubt these things which caused the jury in this case to give the defendant the maximum punishment under the law. It may have been his first conviction, as suggested, but the facts and circumstances bear out the fact that his had been a continuing offense in defiance of the laws of this state. As above stated, this court has often reduced sentences when justice demanded it, but this case does not appeal to us as being one where it should be exercised. The record does not in any way reveal the financial condition of the defendant. No evidence of his former good reputation and good character was introduced. There is no way for this court to determine not only his condition but whether he has in any way reformed. The law has placed the pardon and parole power in the hands of the Governor of this state. If it should be deemed proper, these instrumentalities of the law may be used to the end that justice be done. For the reasons above stated, we do not think the sentence in this case should be reduced. It is therefore ordered that the judgment and sentence of the county court of Pawnee county be affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.