Clinton Tiny PORTER, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12916.

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1961.

Rehearing Denied May 3, 1961

696

Bryan Billings, Woodward, for plaintiff in error.

Mac Q. Willamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Clinton Tiny Porter was charged by information in the County Court of Harper County with the offense of driving a motor vehicle on a public road while under the influence of intoxicating liquor, was tried before a jury, convicted, and his punishment assessed at 30 days in the county jail, and to pay a fine of $50.

The evidence developed that defendant, a 27 year old ex-service man and native of the area, was on September 14, 1959 employed by the Christian Oil Well Service on a rig about 15 or 16 miles west of Laverne, Harper County, as a derrick hand. He had been so employed about four or five months and prior to that time was a farmer. He worked from 4 P.M. until midnight. Soon after coming to work on the day stated, the driller asked defendant and a young man by the name of Keith Hunter to drive to Laverne and get him a fifth of whiskey. They drove to town in defendant's 1955 Chevrolet car and drank several cans of beer before starting back to the rig right after dark.

Keith Hunter testified for the State and said that prior to going into town the whole crew at the rig had been drinking beer. That he and Porter drank four or five cans. Porter denied that he drank any beer at the rig, but admitted that he drank two or three cans of beer after getting to Laverne. Hunter said that when he and Porter started back to the rig they were feeling pretty good, and he would say they were intoxicated. He said he purchased a fifth of whiskey for the driller before leaving town, but denied that he or Porter drank any whiskey. He said Porter was driving and at a speed of 45 or 50 miles per hour, that he had observed the speedometer; that a few miles west of Laverne defendant's car left the road, and Hunter said the next time he remembered anything he was in the hospital at Shattuck.

He said it appeared that they had a tire blow-out that caused the car to leave the road.

Witness Hunter admitted that after the accident he signed a written statement in which he denied that the defendant Porter drank any beer prior to driving into Laverne, and had stated that Porter drank two or three cans of beer at Laverne, gave no indication of being under the influence of alcohol, but appeared sober right up to the time of the car accident. He said he did this to try to help Porter. That Porter had asked him to go up to the office of his attorney, Mr. Billings, and give him a statement as to what had happened.

Archie D. Carter, town marshal at Laverne and a deputy sheriff, testified that on or about September 15, 1959 at about 9 or 9:30 in the evening, a man who was with Mr. Porter came over to his car at the intersection of Main and Broadway in Laverne, and told him there had been a car wreck four and a half miles west of Laverne; that Porter then came over to the police car and wanted witness to call an ambulance, which he did. He said defendant appeared to be intoxicated, and admitted to him that he had been drinking. He said defendant wanted to telephone the sheriff and his people, and he drove him to the Commercial Cafe where he went in to telephone. That thereafter defendant came out and got in the car with witness and they awaited the Highway Patrol, and after Patrolman Jim Holland got there they got in the patrol car and went to the scene of the wreck. They found defendant's car with all four wheels in the air. He said at the time defendant stated he did not know who had driven the car. Witness said the marks showed the car had left the blacktop on the left-hand side of the road as it was being driven west; that it ran through a fence, knocked down three posts, tore wires down and jumped a bank three feet high and rolled about 75 yards up a hill and came to rest 250 yards from where it left the highway. Witness said they later returned to Laverne and Patrolman Holland placed defendant under arrest. At 1:30 or 2 A.M. Sheriff Snider took defendant into custody to be taken to the county seat at Buffalo.

Patrolman Holland testified to seeing defendant, as testified to by Town Marshal Carter, and he gave it as his opinion that defendant was intoxicated at the time. He told about the position of defendant's car from the highway, gave measurements, etc., and estimated that the car was being driven at a speed of 100 miles an hour when it left the road. He said defendant admitted he had been drinking beer; that defendant first said Mr. Hunter was driving the car but later said he must have been driving it himself. Witness said he went to Shattuck the same night and saw Keith Hunter, who had been injured in the car accident.

Chester Snider, sheriff of Harper County, testified that the first time he saw the defendant was early the morning of September 15, when defendant was in jail at Laverne. He had undersheriff Lee Hayes take him to jail at Buffalo. That the next day before defendant was taken before the judge, he told witness he intended to plead guilty, but after he talked with his mother and his lawyer he failed to do so.

Defendant Porter denied he had driven his car over 50 miles per hour, and denied that he first saw Town Marshal Carter in Laverne, but on the contrary, said he first saw Mr. Carter at the scene of the accident and rode back to Laverne with him. Defendant said the left front tire of his car blew out and he lost control of his car; that his car turned over and he received a blow on the top of his head and it dazed him. He said that after he returned to Laverne with Mr. Carter, he went to the Cafe to telephone his folks and later Patrolman Holland came and he went back to the scene of the wreck with Mr. Carter and Patrolman Holland.

Several witnesses testified to the good character of the defendant. The State did not attempt to take issue.

For reversal defendant argues some six propositions of error, as follows:

1. "That the court erred in refusing to instruct the jury upon the issue of defendant's character.

2. "That the court erred in refusing to instruct the jury in regard to the proper consideration to be given to expert testimony.

3. "That the defendant was deprived of a fair trial by improper, prejudicial and inflammatory argument of the county attorney.

4. "That defendant was deprived of a fair trial by prejudicial remarks, statements, and questions of the county attorney.

5. "That the defendant was deprived of a fair trial by errors of the court in the admission and exclusion of evidence.

6. "That the court erred in refusing to allow and try a challenge for cause against the juror F. H. Terbush."

As to propositions four, five and six, counsel for the defendant in his brief says: "It may appear that addition of the last three propositions to the argument is surperfluous, but they should be decided since they might well arise again in event the case is re-tried."

 We have read the entire record very carefully. There was ample evidence to support the verdict of the jury. Ryan v. State, 97 Okl.Cr. 119, 258 P.2d 1208; Goodson v. State, Okl.Cr., 354 P.2d 472. Rare is the case free from all error. The County Attorney did persist in asking leading questions. But all the errors that we have noted were harmless and cannot be deemed to have affected the substantial rights of the defendant. 22 O.S.1951 § 1068 provides:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirec-

tion of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

 We see no useful purpose in writing a lengthy opinion as to each of the propositions advanced by defendant. 20 O.S.1951 § 47 as amended Laws 1953, p. 56, § 2.

We have noted that while defendant produced witnesses as to his character, each testifying he knew the reputation of the defendant in the community as to being a sober, law-abiding citizen, and that his reputation was good, the State took no issue. Nevertheless defense counsel requested the court to given an instruction on the question of what weight or consideration the jury should give the testimony of defendant's character witnesses, and submitted a lengthy instruction, which the court refused to give.

In Holcomb v. State, 95 Okl.Cr. 55, 239 P.2d 806, 807, in paragraph 2 of the syllabus, we said:

"Where there is evidence introduced by the state and defendant on the issue of defendant's character and trial court refuses to give a requested instruction on the issue of character, such refusal may constitute reversible error or not, according to all of the facts and circumstances in the case. It is the better and safe practice to give such requested instruction."

 In the Holcomb case, different from here, there was a conflict in the evidence as to defendant's reputation for being a sober and law-abiding citizen. Therefore, herein we think that the general in-

struction given by the court on the credibility of the witnesses and on the subject of determining the weight to be given their testimony was sufficient. In other words, it is not error to refuse requested instructions which are proper statements of the law, when such requested instructions are substantially covered by the instructions given by the court. See Guthrie v. State, 87 Okl.Cr. 112, 194 P.2d 895.

The second proposition of error had to do with the testimony of Jim Holland, highway patrolman. He gave it as his opinion that defendant was intoxicated when he saw him, as heretofore recited. He also testified that in his opinion defendant's car was travelling at a speed of around 100 miles per hour when he left the black-top road. The defendant testified that at the time of the accident he was travelling at a speed of about 50 miles per hour. Keith Hunter, witness for the State and who was riding with defendant at the time of the accident, testified that he did not know how fast defendant was driving at the time the car ran off the road, but that the last time he looked at the speedometer back down the road a ways, defendant was making 45 or 50 miles per hour.

The Court did give a general instruction as pointed out, on the subject of credibility of the witnesses and the weight to be given their testimony.

The only expert testimony as to speed was given by Mr. Holland, which was rebutted by State witness Hunter, and defendant. While it would have been better for the court to have given the requested instruction, the failure to do so could not have injured defendant in this case, and such failure did not constitute reversible error. In a case where the State would rely largely on expert testimony to make out a case, the failure to give an instruction, where requested, in regard to the proper consideration to be given to expert testimony, might cause reversal of the case.

Counsel next sets out some five excerpts from the argument of the county attorney to the jury, which he claims call for a reversal, as follows:

(1) "We still, as officers, feel though he has a commendable military record, it does not give him a right to get drunk and drive an automobile on the highway and endanger your lives and your relatives, friends—"

(2) "In this case if you, by your verdict, condone drinking and driving on our highways, then you or your wife or employees, neighbors or friends may be killed on the highways by drunk drivers."

(3) " * * * the only reason no one was killed was that no one else was travelling the highway at that point."

(4) " * * * the fact no one was killed in this accident does not lessen the gravity of the offense. Think what might have happened to your wife, your children or to yourself had you been coming along the highway at the time this happened."

(5) "The gravity of this offense should not be measured by the fact that no one was killed in this particular occurrence by what might have happened by the commission of this offense."

We note the following: As to excerpt No. 1, the objection was overruled without an exception noted. Excerpt No. 2, counsel objected and moved the court to declare a mistrial. The motion was overruled and defendant excepted. No. 3, counsel objected and asked that it be stricken. The objection was overruled without an exception noted. Excerpt No. 4, counsel objected and asked that it be withdrawn from the consideration of the jury. The objection was sustained, and the court ruled: "The jury will not consider that part of it". And as to excerpt No. 5, no objection nor exception taken by counsel for defendant. There was no motion to

exclude the remark from the consideration of the jury.

■ We conclude that counsel for the defendant failed to preserve a proper record upon which to predicate his objections to the remarks of the county attorney. See Hathcox v. State, 94 Okl.Cr. 110, 230 P.2d 927, paragraphs 7, 8 and 9 of the syllabus.

Defendant urges in his last proposition of error that the court erred in refusing to allow and try a challenge for cause against the juror F. H. Terbush. This should be noticed.

The record discloses that after the jury was sworn, but before any evidence was introduced, the court declared a recess. During this recess defendant's sister, Juanita McCoy, informed defense counsel that while the jury was being selected she heard one of the jurors make a statement indicating that he purported to have knowledge regarding the case. Defense counsel considered the juror biased and immediately reported this to the court and requested that the juror be withdrawn and another juror selected in his place or that a mistrial be declared. Thereupon Mrs. McCoy was sworn and testified that she heard F. H. Terbush, one of the jurors selected, state in the rear of the court room prior to being drawn, that defendant made the statement that he was not driving because he thought the other boy was going to die, and that after he found out the boy would live, he changed it and admitted he was driving; and that after the recess was the first opportunity she had to inform counsel of what she had overheard. After Mrs. McCoy had been cross-examined at length by the court and county attorney, the defendant's request was denied. On trial, as we have seen, defendant admitted that he was driving the car that ran off the road. The sole question for the jury to determine was whether defendant was under the influence of intoxicating liquor at the time.

■ Jurors often hear of a case and hear of things the defendant may have said, yet qualify for jury service and are able to make impartial jurors. It all depends upon whether they have made up their minds as to the guilt or innocence of the accused. That is, where *an opinion has been formed that would require evidence to remove.* See 22 O.S.1951 §§ 658, 659 and 660; Rice v. Emerson, 181 Okl. 51, 72 P.2d 498; Fleming v. State, 62 Okl.Cr. 446, 72 P.2d 403.

■ We do not have before us the examination of the juror Terbush on voir dire, nor did counsel dictate into the record any answers the juror may have given when he was questioned on voir dire. Presumably counsel questioned all jurors and was satisfied. If his questioning was merely perfunctory, he cannot now complain. Roddie v. State, 19 Okl.Cr. 63, 198 P. 342.

We do not discover from the record where, based on the testimony and showing made by witness Juanita McCoy, counsel requested the court under authority of 22 O.S.A. § 653 to call juror Terbush for further qualifying questions, and for the selection of another juror if he should prove disqualified. See Worley v. State, 97 Okl.Cr. 271, 262 P.2d 483.

■ We are unable to say from the record that the juror was disqualified.

■ While the charge that defendant was under the influence of intoxicating liquors at the time he was involved in the one-car accident is amply supported by the evidence, as has been stated, nevertheless it is our opinion, based on the facts peculiar to this case, that justice would be best subserved by reducing the jail sentence from 30 days to 10 days, and as so modified the judgment appealed from is affirmed.

NIX and BRETT, JJ., concur.