452

THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* BENIGNO RIVERA ROMERO, k/a BENIGNO RIVERA POWER, Defendant and Appellant.

No. 16673.  Decided September 15, 1961.

*Félix Rodríguez Higgins* for defendant-appellant. *Arturo Estrella, Acting Attorney General of Puerto Rico,* and *Genoveva R. Carreras, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, and Mr. Justice Blanco Lugo and Mr. Justice Dávila.

Mr. Justice Dávila delivered the opinion of the Court.

On a certain day of June 1957, defendant and his brother José arrived at about 11 o'clock at night at a bar located on the highway from Guaynabo to La Muda. They ordered drinks and were served. They asked whether there was food and went to the kitchen. They asked the cook to serve them. At that moment other customers arrived. When the manager of the business went to serve those who had just arrived, he noticed that José was pursuing and bothering the cook and he asked him to get out. When he tried to establish order in the premises, they started to struggle and José fell to the floor. At that moment defendant came out of the kitchen and jumped on the manager with a dagger. The latter threw himself to the floor, but nevertheless defendant wounded him. While he was on the floor defendant tried to strike him again. Those who were present there intervened and he was able to rise and escape to a hill situated near the premises. Therefrom he observed the subsequent events. The customers who arrived after the defendant did, tried to leave, but José made them return, but after a while allowed them to go. Shortly afterwards, two policemen named Crespo and Salicrup arrived. When they were investigating the events, defendant and his brother assaulted the policemen and disarmed them. They were wounded with daggers and bullets. After defendant killed policeman Crespo, he went towards Salicrup, who had already been assaulted by José, and fired two shots at him with the gun he had snatched from Crespo, and ended by hitting him with the weapon. The corpses of the policemen were left on the road in front of the bar. They fired at a car that was passing by, which tried to stop, but went on its way. Defendant and his brother left the premises. Defendant was arrested at his home. Next day, at the office of the prosecuting attorney, he informed the prosecuting attorney that Crespo's gun was in his house. A detective went to his

house and found it there. Two informations were filed against defendant and his brother [1] for murder in the first degree; one for Crespo's death and the other for Salicrup's death. An information was filed against appellant for assault to commit murder on the person of the manager of the business. He was also charged with carrying of weapons, a revolver and a dagger, and with not having his weapon registered. Appellant was found guilty in the two murder cases. In the case of assault to commit murder he was found guilty of aggravated assault and battery. In the case of the registration of weapons the court acquitted him but found him guilty in the two cases of carrying weapons. He appealed from the five verdicts of guilty and in support of his appeal he assigns several errors which we shall consider.

1. Appellant argues that he was denied the right to a public and fair trial because the persons who were present at the hearing of the case had to submit themselves to a previous inspection. It is appropriate to point out that only the admission made by the trial judge that he issued an order to that effect appears in the record. However, there is no evidence to the effect that defendant objected to such an order during the trial or that the same was issued in the presence of the jury nor the cause for such order.

Appellant's contention is without merit since the order was not of a wholly exclusive character but rather a measure of security imposed by the judge for the purpose of maintaining the due respect and order in the proceedings. It is not logical to assume, without evidence to that effect, that said measure of security constituted in fact an order of general exclusion which deprived defendant of his right to a public trial. We should presume that every person who submitted to the inspection ordered was allowed to be present

---

[1] Codefendant José Rivera Romero was declared mentally disable and confined in the Psychiatric Hospital.

at the trial wherein appellant herein was found guilty, without discrimination. This situation has already been considered in other jurisdictions, wherein it has been decided that in sensational prosecutions such as the present one, and in which incidents harmful to the dignity of a court may occur, measures of security as the one taken by the trial court are appropriate, without violating defendant's right to a public trial.

█ It is also a long-settled principle that courts have discretion to exclude the public and to take the due precautions during a trial in order to prevent incidents which may interfere with the respect which should prevail in all courts. *People* v. *Cash*, 345 P.2d 462 (Cal. 1959); *Cody* v. *State*, 361 P.2d 307 (Okl. 1961); *Geise* v. *United States*, 265 F.2d 659 (9th Cir. 1959); *People* v. *Blanco*, 339 P.2d 906 (Cal. 1959); 5 Wharton, Criminal Law and Procedure § 2029 (12th ed. 1957); Radin, *The Right to a Public Trial*, 6 Temp. L.Q. 381 (1932); Goheen, *Right to a Public Trial*, 35 Mich. L. Rev. 474 (1937); Annot., 48 A.L.R.2d 1436.

*People* v. *Collazo*, 19 P.R.R. 912 (1913) is clearly inapplicable. There, in a case of breach of peace, the public was excluded from the courtroom during the examination of a witness, against the express objection of the accused.

2. Appellant maintains that the trial court should have given instructions to the jury which would eliminate from the latter's mind the effect that might have been caused by such information published prior to the case by the local press on the facts which were argued at the trial.

█ But it does not appear from the record that appellant requested such instructions. On the contrary, when the court finished giving its instructions to the jury, it specifically announced to the prosecuting attorney and to counsel for the defense, that it was willing to receive any instructions which counsel for the defense or the prosecuting attorney

458

were willing to suggest, to which both answered negatively. Further on, a sheet of special instructions submitted by the defense appeared attached to the record wherein the instructions pointed out by the appellant do not appear. Defendant, therefore, cannot allege that the court erred in failing to instruct the jury regarding such points. *People* v. *Robles*, 10 P.R.R. 470 (1906) and *People* v. *García*, 78 P.R.R. 379 (1955).

It is true that the persons acting as jurors in the case at bar stated that they had become acquainted with diverse details of the case through the press. However, they made it clear that they felt capable of returning a fair verdict which would adjust to the evidence to be presented before them without the intervention of prejudices or mental attitudes which could prejudice defendant, thereby becoming capable of judging appellant impartially. This being the situation, what was the need of giving instructions in the sense adduced by appellant? 34 L.P.R.A. § 681 (7); *Porter* v. *State*, 361 P.2d 695 (Okl. 1961); *Moore* v. *State*, 250 P.2d 46 (Okl. 1952); *Murphy* v. *State*, 112 P.2d 438 (Okl. 1941); *cf. People* v. *Dumas*, 82 P.R.R. 402 (1961). Besides, defendant did not object that said persons be part of the jury, since those jurors who were challenged by the defense were excused.

3. He affirms, also, that the prosecuting attorney made statements and assertions in its opening statement which contributed to prejudice the jury against appellant. We state them below:

(*a*) The prosecuting attorney described defendant and his brother as two quarrelsome fellows who upon arriving at the scene of the crime caused a turmoil there;

(*b*) The prosecuting attorney affirmed that defendant was speaking loudly and that the policeman who had appeared personally in order to investigate the events which were

taking place there, went towards him in order to call his attention, which is not supported by the evidence;

(c) The prosecuting attorney expressed himself to the effect that defendant and his brother fired several shots after having forced the cash register and taken the money, leaving some coins scattered on the floor. Appellant maintains that this impressed the jury as he was previously presented as an armed outlaw.

Let us analyze these statements in the same order in which they have been set forth:

(a) The word "turmoil" falls short of a true description of what happened at the scene of the crime where two policemen died, one of them from dagger and bullets wounds; the persons therein present were made to flee; the manager of the business was wounded and a shot was fired at an automobile which was passing by that place. Obviously, appellant is misinterpreting the prosecuting attorney's statements when referring to the turmoil brought about therein. It may be logically presumed that the prosecuting attorney referred to the general situation created by defendant and his brother, and appellant should not understand that the prosecuting attorney was referring to a turmoil brought about when defendant and his brother arrived at the place but rather to the general situation which ensued later at the scene of the crime.

(b) The statement to which defendant objected is a mere logical conclusion made by the prosecuting attorney of the events occurred on the basis of the whole evidence, and which was confirmed by eyewitness Gonzalo León when he stated that defendant started to say in a loud tone "nothing has happened here and she knows nothing" as the policeman was questioning the cook.

(c) It should be understood that in his preliminary statement the prosecuting attorney considered not only the charge of murder in the first degree, but also the other

charges presented against him, one of which was for the crime of robbery, a charge which was subsequently waived by the prosecuting attorney.

Defendant himself admits that as a general rule the defense as well as the prosecuting attorney are allowed a reasonable margin in the presentation to the jury of what they intend to prove. *People* v. *Díaz*, 74 P.R.R. 348; 5 Wharton, Criminal Law & Procedure § 2173 (12th ed. 1957); Annot., 28 A.L.R.2d 972, 974.

It is clear that the prosecuting attorney may also refer to any fact which may not be separated from the circumstances which surround the crime and which constitute an aid in obtaining a greater understanding by the jury of the theory of the prosecuting attorney. *People* v. *Díaz, supra,* where we stated the following at pp. 355–56:

"Even if the prosecuting attorney in his opening statement refers to facts which are not subsequently proved because the evidence has been inadmissible, if the admissibility presents a debatable question and if the prosecuting attorney has acted in good faith and with legitimate foundations, it is no error if the prosecuting attorney refers to these facts."

We do not believe that the prosecuting attorney's statements were improper, but assuming that they were, we have not been shown that his statements affected the jury so as to prejudice defendant's rights giving rise to the reversal of the judgment. *People* v. *Díaz, supra.*

Finally, in the case at bar the defendant did not even make a general objection to the prosecuting attorney's statement. This in itself constitutes a waiver, except in exceptional cases. *People* v. *Fournier*, 80 P.R.R. 376, 391 (1958); Annot., 28 A.L.R.2d 927, 984–85.

■ 4. Defendant alleges that the prosecuting attorney was allowed to ask the witnesses for the prosecution prejudicial questions which suggested answers on alleged self-incriminating admissions of appellant. The statements to which defendant refers were part of lieutenant José A. Naza-

rio's deposition, witness for the prosecution, who in the direct examination by the prosecuting attorney, answered that defendant had offered him (the witness) and the prosecuting attorney, at the office of the prosecuting attorney, to deliver policeman Crespo's revolver to them. Appellant maintains that such statements lacked voluntariness or could have been motivated by psychological pressure caused by the circumstances in which he was found.

But appellant has not proved this very personal belief of his, nor have we been able to find any evidence in the record to that effect. There is no showing from which this Court may even infer that such psychological pressure existed or that defendant's statements lacked voluntariness.

5. Defendant adds that an examination of the statements of witness for the prosecution reveals what he calls an incomprehensible situation. He argues that said witness first stated that appellant was at the office of the prosecuting attorney when he promised to go to his house with the police to search for policeman Crespo's revolver. Then he alleges that on cross-examination he stated that appellant was hiding in his home, which was surrounded by the police, at the time when the witness arrived and entered with defendant's sister to the home of the latter. Appellant concluded that if defendant was at the prosecuting attorney's office, where he allegedly promised to deliver the revolver, he obviously could not have been at his home when the police went there to search for said revolver, allegedly accompanied by him.

An examination of the record immediately solves the alleged contradiction. Obviously, lieutenant Nazario's statements refer to two different events. Lieutenant Nazario stated on cross-examination and to questions by the defense, that he had been to defendant's home during the night; that the house was surrounded by policemen and that defendant's sister was outside, and that she gave lieutenant permission to enter; that she took him to the room where defendant

462

was and that the latter came out of the kitchen striking a blow at the witness. Then they struggled and meanwhile a shot was heard outside the house. The defendant was taken therefrom and was first taken to San Juan headquarters for his own safety and then to the prosecuting attorney's office in Bayamón. The above-mentioned incident constitutes appellant's arrest.

On direct examination witness Nazario testified before the prosecuting attorney that early in the morning of June 14 he was commissioned by the prosecuting attorney to go to defendant's house, accompanied by the latter, to seize the revolver of policeman Crespo. This came as a result of the statements we have already referred to, wherein defendant offered to deliver policeman Crespo's revolver.

The alleged contradiction does not really exist since according to the statements we have mentioned, the incident of the seizure of policeman Crespo's revolver came after his arrest, defendant already being in the hands of the authorities. That is, after defendant's arrest was completed by lieutenant Nazario during the night, and after he had been taken to the office of the prosecuting attorney in Bayamón, where appellant made the statements which thereafter brought about the commission made by the prosecuting attorney to lieutenant Nazario.

■ 6. Appellant also challenges the entrance of the police officers into his house but we understand that the permission to enter given by defendant's sister to lieutenant Nazario while he was accompanied by appellant's own sister, who led him to the place where he was found, constitutes a sufficient waiver to the right he now claims.

■ 7. Appellant maintains that the trial judge committed error in admitting in evidence the clothes of the victims since that fact contributed to intensify the animosity of the jury against appellant, thereby depriving him of a fair trial. But in *People* v. *Quintana*, 50 P.R.R. 60 (1936), we already

considered this matter and we adopted for this jurisdiction the rule which allows the introduction in evidence of the victims' clothing, certain circumstances which concur in the case at bar being present. It has been held that they are admissible even where its introduction may be prejudicial to the accused. Annotation, 68 A.L.R.2d 903, 906. The admission of this evidence was clearly appropriate in order to show the nature of the wounds, the position of the victims in relation to defendant, and the way and manner in which the wounds which caused the death were inflicted. *Mills* v. *People*, 362 P.2d 152 (Colo. 1961); *Longoria* v. *State*, 168 A.2d 695 (Del. 1961); *State* v. *Nelson*, 321 P.2d 202 (N.M. 1958), *cert. denied*, 361 U.S. 877; *Slater* v. *State*, 336 S.W.2d 163 (Tex. 1960).

8. Because of the introduction of the clothes in the evidence, it is alleged that the widow of one of the victims went into a fit of sorrow, which obviously impressed the jury adversely. There is nothing in the record before us regarding this alleged incident and the trial court correctly denied appellant's attempt to present, on the date set for the approval of the transcript of the evidence, an extra of a newspaper of general circulation where this incident was referred to. Now then, aside from the fact that there was nothing in the record regarding this incident, the rule in these situations is that the defendant must prove with authenticated evidence that the incident has truly been prejudicial. Annotation 46 A.L.R.2d 949. At no time during the trial did defendant's counsel complain about the incident nor requested special instructions so that the jury should not consider the incident. See *Duff* v. *State*, 111 So.2d 621 (Ala. 1958); *State* v. *Peters*, 352 P.2d 329 (Hawaii 1959).

9. Appellant challenges the admission in evidence of certain photographs taken at the scene of the crime which showed the victims lying on the ground just as they remained on the night of the crime. The State offered them to prove

464

the position of the victims' corpses and to confirm the pathologist's statement. Defendant alleges that the introduction of this series of photographs prejudiced him, since they were meant to cause a reaction of grief, pity, and compassion as to the victims and their relatives. We do not believe that the jury should be kept isolated precisely from the facts which they are to judge. We cannot presume that they are persons of extreme sensibility, that the slightest contact with any incident, in murder or in any other crime which they are judging, might affect them in such a way as to preclude them from rendering an impartial verdict. They should know everything related to the case on trial in order to be better fit to render a verdict. It has been held that photographs such as those objected by appellant are admissible. *People* v. *Fournier, supra; People* v. *Torres,* 75 P.R.R. 219 (1953); *State* v. *Robinson,* 360 P.2d 474 (Ariz. 1961); *Stewart* v. *State,* 345 S.W.2d 472 (Ark. 1961); *People* v. *Kemp,* 359 P.2d 913 (Cal. 1961); *People* v. *Robillard,* 358 P.2d 295 (Cal. 1961); *Mills* v. *People, supra; Stoken* v. *State,* 128 So.2d 341 (Miss. 1961); *State* v. *Bennett,* 168 A.2d 282 (R.I. 1961).

10. Appellant raises the question of the impertinence and irrelevancy of the testimony of a witness in relation to the incident which occurred after the facts for which defendant is on trial. It refers to the shots allegedly fired by defendant to a car which attempted to stop when it saw the corpses lying on the highway. Even though this testimony may be considered irrelevant as to the main facts, it is enlightening as to defendant's attitude even after the events occurred. These events completed the picture of what happened there. But if it were irrelevant and impertinent, all the other evidence offered is more than enough to sustain the jury's verdict.

11. Defendant requested an inspection of the scene of the crime in order to "determine the hiding place

behind some bushes" of an eyewitness, the manager of the business, who was the first person to be assaulted on the night of the events. And it was granted for that purpose. He alleges that the inspection took place under circumstances which prejudiced defendant since among other things the aforementioned witness stated that the night of the crime was a very dark night, while the inspection took place in broad daylight. Obviously, this objection should not be raised on appeal. If defendant understood that the inspection should have taken place at night he should have said so in court. However, what appears from the record is that, upon being examined by the trial judge as to whether the parties were satisfied with the inspection made of the premises, the defense answered that it was.

12. Appellant alleges that the trial court did not give instructions as to self-defense in relation to defendant's brother, in the initial incident which he had with the manager of the business. Appellant did not request instructions to that effect, but the truth is that from the prosecuting attorney's evidence, the only one which was presented before the jury, there is no element whatsoever justifying an instruction of self-defense. What flows from the record is that the administrator of the business asked defendant's brother to get out of the bar, where obviously he had no right to be, and a struggle ensued when he was assaulted by him, and it is then when defendant assaulted him with a dagger, the administrator of the business being unarmed. When the other persons who were present there intervened, he fled in order to avoid another attack.

13. Appellant objects to the instructions which the trial court gave in relation to the crime of carrying prohibited weapons and he alleges that the carrying with which defendant is charged was incidental and that our decisions hold that such carrying does not constitute a crime. Without stopping to consider such carrying of arms at the scene of

the crime, it was proved that defendant carried the criminal weapon which he seized from policeman Crespo to his home. Clearly this constitutes sufficient carrying of arms to be guilty of the violation of the law.

14. Appellant's allegation to the effect that the fact that the presiding judge failed to sum up the evidence was prejudicial to him, is answered by the statement of counsel for the defense which appears in the record to the effect that he agrees that no such summary be made. But see *People* v. *Millán*, 71 P.R.R. 410 (1950). Appellant alleges that the fact that the evidence was not summarized prejudiced him since he was deprived of instructions regarding fits of anger or sudden quarrel. The fact that a summary of the evidence was not made could not have the effect of depriving appellant of instructions on self-defense, if there had been ground in the evidence to justify instructions in that sense. Now, the instruction was not requested, but the truth is that there is nothing in the evidence to justify an instruction in this sense, as there is nothing which would have justified the transmission of other instructions requested by defendant. The evidence sufficiently shows the existence of malice aforethought and deliberation.

15. Appellant claims that his verdict be set aside on the ground that the jury was moved by passion, prejudice, and partiality, and in order to sustain his claim he affirms that the jury rendered a verdict of guilty although there are contradictions in the evidence for the prosecution. The assigned error is entirely frivolous. The contradictions incurred by the witnesses for the prosecution are the usual contradictions, when more than one person witnesses the events and then narrates them. Now, in the fundamental facts there are no contradictions. And it could be quite amiss to label a jury of unfair and prejudicial because it renders a verdict of guilty in a case where there have been

contradictions in the evidence. In the present case defendant enjoyed all the guarantees established by the Constitution and by the laws of Puerto Rico at the trial held in the trial court, and certainly this is not the case to which the case of *Batalla* v. *District Court*, 74 P.R.R. 266 (1953) cited by appellant may be applied.

The judgment appealed from is affirmed.